**RAILWAY EXPRESS AGENCY, Incorporated, Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

United States District Court
S. D. New York.

June 6, 1957.

Fulmer Long, Chicago, Ill., James V. Lione and William H. Marx, New York City, for plaintiff.

Robert W. Ginnane, Gen. Counsel, and H. Neil Garson, Asst. Gen. Counsel, Washington, D. C., for Interstate Commerce Commission.

Victor R. Hansen, Asst. Atty. Gen., James E. Kilday and Maurice A. Fitzgerald, Attys., Dept. of Justice, Washington, D. C., Paul Williams, U. S. Atty., and Harold J. Raby, Asst. U. S. Atty., New York City, for the United States.

Proskauer Rose Goetz & Mendelsohn, New York City, and Schnader, Harrison, Segal & Lewis, of Philadelphia, Pa., for United Parcel Service, Inc., Intervenor, Bernard G. Segal and Irving R. Segal, Philadelphia, Pa., S. Harrison Kahn, Washington, D. C., and Jacob Imberman, New York City, of counsel.

Before SWAN, Circuit Judge, and MURPHY and EDELSTEIN, District Judges.

SWAN, Circuit Judge.

This case is before a three judge court convened pursuant to applicable statutory provisions.[1] It has been heard upon the complaint, the answers thereto, the record made in an administrative proceeding before the Interstate Commerce Commission, and the briefs and arguments of counsel.

The action seeks annulment or suspension of two orders of the Commission, dated respectively September 24, 1956 and January 23, 1957, entered in a proceeding entitled United Parcel Serv-

1. 28 U.S.C.A. §§ 1336, 1398, 2321–2325.

ice, Inc., Common Carrier Application, Docket No. MC–115495. In this proceeding, commenced in August 1955, United Parcel applied for a certificate of public convenience and necessity, pursuant to 49 U.S.C.A. § 307(a), to operate as a common carrier by motor vehicle of general commodities, with certain exceptions, over described irregular routes between Chicago, Illinois, and certain points in Iowa, Illinois, Indiana, Wisconsin and Michigan.[2] Protests to the granting of such authority were filed by Railway Express Agency and several motor common carriers. The application was thereafter referred to an examiner who, after extensive hearings, recommended that a certificate be granted. Exceptions to the examiner's report were filed by protestants but Division I of the Commission unanimously adopted the examiner's recommendation and ordered that upon fulfillment of certain conditions including the filing by United Parcel of a proper tariff, the certificate be issued. 68 M.C.C. 199, 206. This is the order of September 24, 1956. The second order complained of denied Railway Express Agency's petition to the full Commission for a reconsideration of the order of Division I. Thereafter United Parcel filed a tariff to become effective April 1, 1957 to which Railway Express Agency filed a protest. The Commission declined to allow the protest, advising, however, that its declination "does not constitute approval of the protested schedules." The tariff became effective April 1, 1957 without Commission action. On the same date a certificate of public convenience and necessity was issued to United Parcel.

The present action was commenced by the issuance of summons March 28, 1957. The complaint alleges that the orders are illegal because a "necessary ingredient" of United Parcel's proposed operation is a charge of $2 per week for a pick-up call each business day regardless of the shipper's need or demand for such service.[3] This is asserted to constitute an unlawful discrimination against shippers who require transportation less than five days per week, contrary to 49 U.S. C.A. § 316(b) and (d). Neither the examiner nor Division I passed upon this contention. The examiner's report states that the objection to "the charging of a fixed amount weekly for scheduled pick-up service * * * [is] premature," and "if applicant is granted a certificate it will be expected to publish and maintain reasonable rates and charges for all services performed." Division I said: "If applicant is granted authority, it will be required to comply with all applicable rules and regulations of the Commission and will not be permitted to engage in practices which are incompatible with its status as a common carrier. * * * We are not convinced that it cannot operate in conformity with our requirements affecting motor common carriers and still render an efficient service responsible to the public need."

2. 49 U.S.C.A. § 307(a) provides:
"Subject to section 310 of this title, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied: * * "

3. The tariff filed by United Parcel incorporated this allegedly unlawful discriminatory provision in the following form:
"Note 1: When pick-up service is requested in writing and furnished, a service charge of $2.00 per week shall apply in addition to the rates set forth in this item and the carrier will call at the consignor's place of business once each business day to pick up packages for delivery to all points served without special pick-up request and whether or not any packages are available for delivery. (Packages tendered at the carrier's receiving stations will not be subject to such additional charges.)"

■ While conceding that ordinarily rates are not a relevant factor in certificate proceedings, the plaintiff argues that the Commission's action in refusing to consider the validity of the $2 per week charge "was arbitrary and capricious and therefore the orders of the Commission should be set aside." We see nothing arbitrary in the Commission's action. It accords with the Supreme Court's statement in American Trucking Associations v. United States, 326 U.S. 77, at page 86, 65 S.Ct. 1499, at page 1503, 89 L.Ed. 2065:

> "* * * It is objected that the railroad as a motor carrier has been permitted through other proceedings to file illegal tariffs, violative of Section 217 of part II of the Interstate Commerce Act, and has been improperly exempted by the Commission from certain accounting requirements of Section 220 of the same part to which the other motor carriers are subject. *These are obviously not grounds upon which appellants can base an argument against the grant of a certificate of convenience and necessity.*" [Italics added.]

Nor has the Commission's action deprived Railway Express Agency of opportunity to challenge the legality of United Parcel's rate schedules, pursuant to section 316(e) of the Act.[4] Until this administrative remedy has been exhausted, complaint to the courts is premature. See National Water Carriers Ass'n v. United States, D.C.S.D.N.Y., 126 F.Supp. 87, 90.

■ The report and order of Division I made the following findings:

> "We find that the present and future public public convenience and necessity require operation by applicant, in interstate or foreign commerce, as a common carrier by motor vehicle, over irregular routes, of the commodities, from and to the points, and subject to the restrictions described in the appendix hereto.
>
> "We further find that the holding by applicant at the same time of the certificate authorized to be issued herein and of the permit hertofore issued to it will be consistent with the public interest and the national transportation policy.
>
> "We further find that applicant is fit, willing, and able properly to perform such service and to conform to the requirements of the Interstate Commerce Act and to our rules and regulations thereunder; * * *"

These findings, if supported by the administrative record, are sufficient to require the order to be upheld. See Newtex S. S. Corp. v. United States, D.C. S.D.N.Y., 107 F.Supp. 388, affirmed 344 U.S. 901, 73 S.Ct. 285, 97 L.Ed. 696.

■ Plaintiff contends that the testimony of public witnesses solicited on the basis of low rates is not sufficient to establish the convenience and necessity required by the statute. But the Commission did not base its finding of convenience and necessity on the specific rate structure proposed by the applicant. On the contrary it found that neither plaintiff nor other carriers were meeting, or were fit, able and willing to meet, the shippers' needs for the particular service proposed by the applicant, and it expressly rejected the protestants' argument that the public witnesses favored the application out of a desire for lower rates.[5] The opinion in Atlanta-New Orleans Motor Freight case, D.C.N.D.Ga., 155 F.Supp. 68 quoted in the defendants' brief seems closely in point. We think it apparent from the reports of the examiner and Division I that the certificate was grant-

---

4. "Any person * * * may make complaint in writing to the Commission that any such rate, fare, charge, classification, rule, regulation, or practice, in effect or proposed to be put into effect, is or will be in violation of this section or of section 317 of this title. * * *"

5. United Parcel Service, Inc., Common Carrier Application, 68 M.C.C. 199, at 203-4.

ed to United Parcel on the basis of evidence showing a more efficient service, at a lower cost and of a type not presently offered to shippers.

Accordingly the complaint is dismissed.

THOMAS F. MURPHY, District Judge (dissenting).

The issuance of a certificate is dependent upon a finding that the "applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder." 49 U.S.C.A. § 307. Such a finding was made in the instant case but plaintiff alleges that there is no evidence to support it. I agree.

The Examiner found, and Division I agreed, that the service proposed to be rendered by United Parcel is "required by the present or future public convenience and necessity." According to the Examiner the service offered by the applicant "has been designed and developed to accomplish the expeditious delivery of small packages of the type for which Parcel Post is now generally utilized, at rates comparable with Parcel Post * * *" and he found that "the record establishes an urgent need on the part of the shipping public for a small package service such as that proposed and which is now effectively available only through the medium of the Parcel Post System." These findings are not here disputed. Both from these excerpts, and a reading of the reports as a whole, it is abundantly clear that the requisite finding of convenience and necessity depended chiefly upon United Parcel's proposal to operate on the basis of Parcel Post rates. Thus, while rates are not usually relevant or pertinent in application proceedings, in the instant case rates were the predominant factor which led to the issuance of a certificate.

Turning now to the question of fitness and ability, it becomes clear that the necessary finding must go further than a simple determination that United Parcel is fit, willing and able to pick up, transport and deliver packages. The finding now must be to the effect that United Parcel is fit, willing and able to perform the above-mentioned physical operations at Parcel Post rates and in conformity with the Commission's rules and regulations.

An integral part of the applicant's proposal is the practice of charging shippers $2 a week for pick-up service five days a week whether or not the shipper requires a pick-up on any particular day. Shippers who do not wish or need daily pick-ups must either pay the flat rate or deliver their packages to applicant's terminal themselves. Only 1% of applicant's business is done by the latter method. Plaintiff urges that this is illegal and in violation of 49 U.S.C.A. § 316(d). The Examiner rejected this contention as being prematurely raised and asserted that the applicant would be required to, and indeed had agreed to, comply with the Commission's rules and regulations with respect to rates and charges for services performed. Earlier in the report he assumed that the applicant would conduct his proposed operations in a manner similar to the intrastate operations presently conducted in the Chicago area, i.e., the flat $2 a week pick-up charge would be carried over into the interstate operations. Division I agreed. However, the order denying plaintiff's petition to the full Commission for a reconsideration stated that "such denial does not constitute approval of the protested schedules." It is apparent plaintiff's objection was treated as a rate question and therefore inappropriate to an application proceeding.

While it is true plaintiff's objection raises a question of rates, it goes far deeper than that. This is not the usual case since the main justification for issuing the certificate was based on the rates United Parcel proposed to charge. "Although the rates and charges for a proposed motor carrier operation are not in issue in an application proceed-

ing, the economics of such an operation are definitely in issue. Sufficient facts should be shown to establish that adequate revenues will be earned by the applicant, that its operating costs will not exceed the prospective revenues and that the proposed operation can be conducted in a feasible, economical and efficient manner under the Commission's rules and regulations." L.P.M. Corporation Extension, Docket No. M.C.–111015.

The importance of plaintiff's objection becomes clear when we examine the reports with reference to United Parcel's fitness and ability. The Examiner's sole finding on the question of applicant's financial ability to perform at Parcel Post rates is "All of these companies[1] are in good financial condition. A pro forma balance sheet giving effect to the proposed merger of the Illinois company into applicant indicates assets of almost $3,000,000 and a similar statement giving effect to all the above described mergers indicates assets of almost $4,000,000." Surely, an asset figure without reference to liabilities or net income is completely meaningless. The Division I report goes into slightly more detail and finds that applicant had assets of $480,603, and net income for the first nine months of 1955 of $15,125. It concludes by saying United Parcel is "fit and able, financially and otherwise, to perform the proposed operation" and that it was "not convinced that it cannot operate in conformity with our requirements and still render an efficient service responsive to the public need."

Both findings of fitness and ability are predicated upon applicant's past use of the complained of pick-up charge, and on the presumed use of the same allegedly illegal charge in the future. There is not a shred of evidence in the record pertaining to United Parcel's financial ability to perform at low rates without this charge.

There is, however, considerable financial data in the record. The figures are most complete with respect to Illinois. It makes daily pickups from 1294 consignors. Multiply this by $2 a week for 52 weeks and it appears that $134,576 of its total 1955 revenue of $189,433,[2] or better than 70% of it is obtained by use of the allegedly illegal practice. Consider, then, that Illinois would net, without the pick-up charge, only $54,857 after gross revenues of $6,991,964 and assets of $2,292,438, and it becomes obvious that a determination of the legality or illegality of the pick-up charge vitally affects the ability to perform. The fig-

1. The proposal contemplated a merger of United Parcel of Illinois, Milwaukee and Cleveland into the applicant.

2.

| | Applicant | Illinois | Consolidated |
|---|---|---|---|
| Assets | $480,603 | $2,292,438 | $2,773,041 |
| Gross Revenue | $1,350,144–$1,800,192* | $5,243,973–$6,991,964* | $6,594,117–$8,792,156* |
| Net Income | $15,125–$20,165* | $142,075–$189,433* | $157,200–$209,598* |
| Net Income Less Pick-up Charge | $6,053[b] | $54,857[a] | $60,910[b] |

| | Milwaukee | Cleveland | Consolidated |
|---|---|---|---|
| Assets | $284,492 | $767,230 | $3,824,763 |
| Gross Revenue | $864,647–$1,152,862* | $934,613–$1,246,150* | $8,393,337–$11,191,168* |
| Net Income | $17,171–$22,894* | $16,337–$21,782* | $190,708–$254,274* |
| Net Income Less Pick-up Charge | $6,871[b] | $6,536[b] | $74,317[b] |

*—Projected yearly figures based on the nine month figures contained in the record.

a—Computed as follows: Projected yearly income of $189,433 less income from pick-up charge—1294 consignors at $2 a week for 52 weeks or $134,576.

b—Computed by deducting 70% of projected net income. This figure was used, in the absence of any others, because it approximated the percentage of net income derived from the pick-up charge determined in the case of Illinois.

**744**

ures with respect to the applicant are even more striking—assets of $480,603, gross revenue $1,800,192, net income without the pick-up charge, $6,053. The slightest rise in wages or other operating expenses could wipe its profit out completely. Applicant would then be forced either to discontinue operations or to raise its rates above the Parcel Post level, although the main justification for convenience or necessity rests on its proposal to operate at Parcel Post rates. Examined in the light of these considerations it is obvious that the Commission was arbitrary and capricious in declining to determine the legality of the pick-up charge. It is logically impossible for the Commission to make a finding of ability to perform in conformity with the regulations when it refuses to interpret these regulations with respect to a practice whereby the applicant derives 70% of its revenues.

This court has jurisdiction to review the order of the I.C.C. to determine whether such order has support in the law and in the record. United States v. Pierce Auto Lines, 1945, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821.

Unless and until the Commission determines the legality of the complained of practice it is impossible for us to tell if the record supports a finding of financial ability to perform in accordance with the rules and regulations. While it is true Railway Express can challenge the legality of United Parcel's rate schedule pursuant to § 316(e) of the Act, success in that proceeding would still have no effect on the issuance of the certificate. Yet if Railway Express is successful there is no evidence in the record to support the Commission's finding.

Accordingly, I would remand the case to the Commission for a determination of the legality of the pick-up charge. In the event said charge is found to be illegal the Commission should be directed to reconsider the applicant's ability to perform at Parcel Post rates on the present record or to reopen the hearings for further testimony.