GREYHOUND CORPORATION *v.* PUBLIC
SERVICE COMMISSION.

1. Carriers—Public Service Commission—Review of Questions of Fact or Law.

A party considering himself aggrieved by a holding of the public service commission on questions of fact or questions of law with respect to carriers, may have review by bill in equity in circuit court of Ingham county, or, if such party seeks review of the questions of law only, he may take an appeal in the nature of certiorari direct from the commission to the Supreme

---

References for Points in Headnotes

[1] 9 Am Jur, Carriers § 102.
[2, 3] 9 Am Jur, Carriers § 273.
[4, 6, 7] 43 Am Jur, Public Officers §§ 495, 496.
[5] 43 Am Jur, Public Officers § 471.
[8–11] 9 Am Jur, Carriers § 56.
[12] 37 Am Jur, Motor Transportation § 20.
[13] 9 Am Jur, Carriers § 287.
[14] 9 Am Jur, Carriers § 5.
[15] 9 Am Jur, Carriers § 4.
[16] 37 Am Jur, Motor Transportation § 10 *et seq.*
[17] 37 Am Jur, Motor Transportation § 3.
   What carriers are within statutory definition of common carriers by motor vehicle. 161 ALR 417.
[18, 19] 43 Am Jur, Public Utilities and Services § 218.
[20] 14 Am Jur, Costs § 97.

Court, leave being first obtained from latter (CLS 1956, § 479.-20).

2. SAME—PUBLIC SERVICE COMMISSION—INGHAM CIRCUIT COURT REVIEW.

The Ingham county circuit court's review of the public service commission's holdings with respect to carriers necessarily implies that the matter reviewed was before the commission and within the jurisdiction thereof to determine (CLS 1956, § 479.-20).

3. SAME—PUBLIC SERVICE COMMISSION—SIGNATURE ON ORDERS—REVIEW—JURISDICTION OF INGHAM CIRCUIT COURT.

Ingham county circuit court's determination on review of order of public service commission as to carriers that it was not within that court's jurisdiction to determine whether or not one of the commissioners had the right to sign the opinion and order of the commission being reviewed, because of alleged removal from the State, *held*, proper, since the matter had not been put in issue before the commission (CLS 1956, §§ 201.3, 479.20).

4. OFFICERS—DE FACTO OFFICER.

One in actual occupancy of an office and performing its duties under apparent claim of right to do so is not subject to have his acts challenged notwithstanding that a vacancy may exist, from the legal standpoint, which may be filled by appointment of a successor.

5. SAME—DE FACTO OFFICER.

A *de facto* officer is one whose title is not good in point of law, but who is in fact in the unobstructed possession of an office and is discharging its duties in full view of the public in such manner and under such circumstances as not to present the appearance of being an intruder or usurper.

6. SAME—DE FACTO OFFICER.

The actions of a *de facto* officer are not open to question upon jurisdictional grounds, there being no difference between the acts of a *de facto* and a *de jure* officer so far as the public interests are concerned.

7. PUBLIC SERVICE COMMISSIONS—DE FACTO COMMISSIONER—REVIEW OF ORDERS.

Action of a member of the public service commission in signing an order of the commission was not subject to attack in review of the commission's orders in Ingham circuit court, where he had been in possession of the office and continued to function

therein until after the questioned order had been signed (CLS 1956, § 479.20).

**8.** CARRIERS—DUE PROCESS—RESTRICTED COMMON CARRIER—HEARING.

Due process in connection with hearing on parcel delivery petitioner's application for authority as restricted common carrier to transport parcels up to a specified weight and size between all points in the southern part of the lower peninsula over irregular routes *held,* not to have been denied, by reason of fact that hearing was conducted by an employee of the public service commission without an order of reference to the employee having been entered in the records of the commission, where no claim is made that any party desiring to offer proofs was precluded from doing so during extended hearing or that there was any misunderstanding on the part of appellants with reference to the conduct of the hearing (PA 1933, No 254, as amended).

**9.** SAME — PUBLIC SERVICE COMMISSION — STATUTES — RESTRICTED COMMON CARRIER—COPY OF REPORT—ORAL ARGUMENT.

The basic requirements as to procedure before the public service commission with respect to authority to operate as a restricted common carrier were not violated by reason of the fact that no copy of report of employee of the commission who held the extended hearing was given to parties opposing the grant of such application and no opportunity given for oral argument thereupon, where statute did not provide for submission of such copies or for such oral argument (PA 1933, No 254, as amended).

**10.** SAME—PUBLIC SERVICE COMMISSIONS—ORDERS—RECITALS—REPORT OF HEARING.

Order of public service commission granting petitioner authority to operate as a restricted common carrier between all points in the southern part of the lower peninsula for the transmission of parcels up to a specified weight and size and over irregular routes was not invalid for failure to recite the transmittal and receipt by it of the report of its employee who had conducted an extended hearing on the matter, where the controlling statute does not require such a recital and it does not appear that parties opposing the petition were deprived of any substantial right (PA 1933, No 254, as amended).

**11.** SAME—PUBLIC SERVICE COMMISSION—DUE PROCESS.

Due process *held,* not to have been denied parties opposing petition for authority to operate as a restricted common carrier

of parcels up to a specified weight and size between all points in the southern part of the lower peninsula over irregular routes, where it does not appear that the public service commission has not given due and proper consideration to the questions involved in the proceeding before it, or that the members of the commission did not evaluate the testimony in the light of the claims of the respective parties and make a determination as to the merits of each issue (PA 1933, No 254, as amended).

12. SAME—COMMON MOTOR CARRIERS OF PROPERTY.
   The motor carrier act does not contemplate that party who is authorized to operate as a common motor carrier of property should engage in the transportation by motor vehicle of all kinds of personal property for anyone desiring service without limitation or restriction (CL 1948, § 475.1, as amended by PA 1959, No 232).

13. SAME—COMMON CARRIERS—LIMITATIONS.
   The holding out by a common carrier need not be unlimited in character.

14. SAME—RESTRICTED COMMON CARRIER.
   Order granting applicant, previously serving certain department stores and other places of business in the Detroit area as a contract carrier, authority to operate as a restricted common carrier for the transmission of parcels up to a specified weight and size between all points in the southern part of the lower peninsula over irregular routes but not permitting it to transport thereunder commodities sold by department stores and specialty shops to or from customers thereof or between such stores and shops and branches or warehouses nonetheless made the applicant a common carrier within the limitations imposed (PA 1933, No 254, as amended).

15. SAME—COMMON CARRIER OF PROPERTY.
   A common carrier of property is one who holds himself out as ready to engage in the transportation of goods for hire as a public employment, not as a casual occupation within the limits of his capacity and sphere of the business required of him, so that he is bound to serve all who apply and is liable for refusal, without sufficient reason, to do so.

16. SAME—RESTRICTED COMMON CARRIER—CHARGE FOR DAILY PICKUP SERVICE.
   Weekly charge of $2 for daily pickup service of parcels, irrespective of the number of such parcels, made by party authorized

to serve as a restricted common motor carrier, may not be interposed as an objection of such significance as to invalidate a certificate of public convenience and necessity, the issuance of which is justified by proofs (PA 1933, No 254, as amended).

17. SAME—CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY—COMMON CARRIER—RESTRICTIONS.

A certificate of public convenience and necessity to operate as a carrier of parcels up to a specified size and weight over irregular routes between any points within the southern portion of the lower peninsula but not for the transportation of commodities sold by department stores and specialty shops to or from customers thereof or between such stores and shops and branches and warehouses did not effect a permit to operate as a contract rather than a common carrier (PA 1933, No 254, as amended).

Per CARR, KELLY, SMITH, BLACK, EDWARDS, and SOURIS, JJ.

18. SAME—COMMON CARRIERS—EXEMPTION FROM RATE ORDER—DISCRIMINATION.

The exemption of a common carrier's operations previously subject to minimum rate order applicable to other carriers constitutes a change in substance upon which a notice of hearing must be given to affected parties in order to avoid unjust discrimination, undue preference, or advantage (CL 1948, § 479.-18).

19. SAME—COMMON CARRIERS—EXEMPTION FROM RATE ORDER—HEARING.

Order of public service commission exempting restricted common carrier from minimum rate order, without there having been noticed or held a hearing with respect thereto at which affected parties could be present, was invalid (CL 1948, § 479.-18).

20. COSTS—FAILURE OF EITHER PARTY TO PREVAIL IN FULL.

No costs are allowed on appeal in competing carriers' suit to review order of public service commission granting intervening defendant a certificate of public convenience and necessity as a restricted common carrier and subsequent order exempting it from minimum rate order resulting in affirmance of first order and reversal of later order, since neither party has fully prevailed (PA 1933, No 254, as amended).

Per SMITH, BLACK, EDWARDS, and SOURIS, JJ.

CARR and KELLY, JJ., dissenting.

Appeal from Ingham; Salmon (Marvin J.), J. Submitted April 5, 1960. (Docket No. 3, Calendar No. 47,809.) Decided July 11, 1960.

Bill by the Greyhound Corporation, a Delaware corporation, Short Way Lines, Inc., an Ohio corporation, 11 other common motor carriers, all Michigan corporations, and Michigan Motor Bus Association, a Michigan corporation, against the Michigan Public Service Commission to review the grant of a certificate of public convenience and necessity to United Parcel Service of Detroit, Inc., a Michigan corporation, which intervened as a party defendant, and to vacate commission's action in exempting United Parcel from previously entered minimum rate order. Railway Express Agency, Inc., a Delaware corporation, joined as intervening party plaintiff. Decree for defendants upholding orders of commission. Plaintiffs appeal. Affirmed as to grant of certificate, reversed as to exemption from minimum rate order, and remanded.

*Matheson, Dixon & Brady (Edmund M. Brady, Walter M. Bieneman,* and *John M. Veale,* of counsel) and *Fraser, Trebilcock, Davis & Foster (Archie C. Fraser,* of counsel), for plaintiffs.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *Robert A. Derengoski* and *John E. Tormey,* Assistants Attorney General, for defendant Public Service Commission.

*Butzel, Eaman, Long, Gust & Kennedy (Irving R. Segal* and *William M. Saxton,* of counsel), for intervening defendant United Parcel Service of Detroit, Inc.

CARR, J. (*concurring in part, dissenting in part*). At the time of the institution of the proceeding before the Michigan public service commission, from which this case has resulted, and for some time prior thereto, the United Parcel Service of Detroit, Inc., was serving certain department stores and other places of business in the Detroit area as a contract carrier. Under date of August 11, 1955, it filed an application with said commission seeking authority as a restricted common carrier to transport parcels and packages not exceeding 50 pounds in weight, or 108 inches in length and girth combined, between all points in the southern part of the lower peninsula of Michigan over irregular routes. Plaintiff-appellants intervened in the proceeding in opposition to the application. A hearing was had beginning July 16, 1956, and terminating on November 8th following. The proofs were taken before William L. King, an employee of the commission, who submitted to the commission a report entitled "Suggested Commission Action". Under date of August 6, 1957, an opinion and order signed by Commissioners Maurice E. Hunt and James H. Lee was filed, and was served on plaintiffs 2 days later.

It appears that the commission, under date of April 10, 1950, had issued a minimum rate order covering transportation by certificated common carriers by motor truck, which order was duly published. It further appears from the record before us that from time to time the commission had exempted certain carriers from such order, and United Parcel Service, after August 6, 1957, petitioned for such action in its behalf. Plaintiff-appellants requested that a formal hearing be held on the petition, but the request was not granted. Thereafter the parties referred to as opposing the relief granted to United Parcel Service by the order of August 6,

1957, appealed therefrom to the circuit court of Ingham county pursuant to the provisions of the statute, and by amended bill of complaint also appealed from the order* exempting United Parcel Service from the minimum rate order of 1950.

Intervening plaintiff Railway Express Agency, Inc., was at its request added as a party plaintiff and adopted in its bill of complaint, with certain exceptions, the averments of the pleading filed by the other plaintiffs. United Parcel Service also intervened as a party defendant. Answers were filed to the plaintiffs' pleadings and the matter was brought on for hearing in circuit court on November 4, 1957. Proofs were taken, and subsequently amended pleadings were filed for the purpose of amplifying the issues involved. The case was finally submitted on April 15, 1958.

On the hearing in circuit court it was the claim of the original plaintiffs and appellants that the order signed by Commissioners Hunt and Lee was invalid because, it was alleged, at the time Commissioner Hunt had changed his residence from Michigan to California, that in doing so he vacated his office and was disqualified from participating in any commission action after such claimed removal. Testimony was offered and received with reference to the situation. At the conclusion of the proofs counsel stipulated that the testimony taken in circuit court need not be returned to the commission for consideration thereby, and the matter was submitted accordingly on oral argument and briefs. The circuit judge filed his opinion on April 24, 1958, upholding the action of the commission in issuing the orders from which the appeals were taken and dismissing the bill of complaint. The appeal to this Court has resulted.

* Dated August 26, 1957.—REPORTER.

The circuit judge concluded that he was without jurisdiction to determine whether Commissioner Hunt was authorized to act as a member of the commission, with Commissioner Lee, in issuing the order of August 6, 1957. Mr. Hunt did not participate in the subsequent order from which an appeal has been taken, exempting United Parcel Service from the operation of the minimum rate order of 1950, above mentioned. Appellants claim that the judge was in error in declining to pass on the matter and in failing to hold that the order was a nullity because of Commissioner Hunt's disqualification.

Provisions pertaining to the review of an order of the public service commission by the circuit court of Ingham county under the motor carrier act* are found in CLS 1956, § 479.20 (Stat Ann 1959 Cum Supp § 22.585). Said section provides that if evidence is offered and received on such review that is found "to be different from that offered upon the hearing before the commission, or additional thereto" the court shall submit a copy of such evidence to the commission and stay further action for a period of 15 days, unless the parties to the action stipulate to the contrary. Upon receipt of such additional evidence the commission is required to give it consideration and may alter, modify, amend, or rescind the order from which the appeal has been taken, reporting its action to the court within a period of 10 days. The language of the statute clearly implies that the proofs taken in the circuit court on the appeal shall have reference to the matters involved in the proceeding before the commission. If issues that were not before the commission, and on which it was not empowered to pass, could be injected into such a case on appeal, it is obvious

---

* PA 1933, No 254, as amended (CL 1948, § 475.1 *et seq.*, as amended [Stat Ann and Stat Ann 1959 Cum Supp § 22.531 *et seq.*, as amended]).

that the nature of the action might be materially altered in the circuit court and decree entered there based on the determination of matters on which the commission did not and could not pass. Such, we think, was not the intention of the legislature. We are concerned here with a statutory appeal rather than with the original exercise of the inherent jurisdiction of a court of equity.

In *National Automobile Transporters Ass'n* v. *Ingham Circuit Judge,* 279 Mich 394, 399, it was said by the Court, speaking through Mr. Justice NORTH, following a discussion of the procedure under the statute:

"It follows that under present statutory provisions a party conceiving himself aggrieved by a holding of the Michigan public utilities commission on questions of fact or questions of law, may have review by bill in equity in the circuit court of Ingham county; or if such party seeks review of questions of law only, he may (leave being first obtained) take an appeal in the nature of certiorari direct from the commission to the Supreme Court."

It will be noted from the above language that this Court has construed the proceeding on appeal to the circuit court of Ingham county as a review of holdings by the commission on questions of fact or questions of law. This necessarily implies that the matter reviewed was before the commission and within the jurisdiction thereof to determine. See, also, *General Telephone Company of Michigan* v. *Public Service Commission,* 341 Mich 620, 625 (8 PUR3d 97).

In support of the claim that the circuit court of Ingham county, on statutory appeal from an order of the public service commission, was empowered to determine the question as to the right of one of the commissioners to participate in the making of

the order from which the appeal was taken, attention is directed to certain decisions from other States, including *Moore & Thompson Paper Company* v. *Bellows Falls Hydro-Electric Corporation,* 111 Vt 222 (13 A2d 190). That case arose under a statute, not analogous to any act of the Michigan legislature, providing in substance that a member of the public service commission of the State who had heard all or a substantial part of a case and had retired from office before the case was completed should remain a member for the purpose of concluding and deciding such case, signing findings, orders, and judgments therein. It appeared that 2 members of the Vermont commission had retired before a final order in a rate case had been entered. Pursuant to the statute, and notwithstanding that their successors had been appointed, an order was entered which in terms disposed of the matter. No question was raised as to the validity of such order. It was clearly in accordance with the statute. Subsequently, however, the members of the old commission, so-called, undertook to enter a supplemental order. It was held that the proceeding having been definitely disposed of, the statue did not authorize further assumption of authority by former members of the commission. The question at issue in the case was the interpretation of the statute. Insofar as the present controversy before this Court is concerned it is not in point.

Counsel have also cited *Hurley* v. *Board of Mississippi Levee Commissioners,* 76 Miss 141 (23 So 580); *Johnston* v. *Jones,* 23 NJ Eq 216; and *Garmire* v. *American Mining Co.,* 93 Ill App 331. The first 2 of said cases were suits in equity for injunctive relief, and as such involved the exercise of general powers of a court of equity. The *Garmire Case* was an action of *quo warranto* to try the right of directors of a private corporation to hold such positions. These

cases furnish no assistance in determining the question here raised by appellants, the answer to which depends primarily on the interpretation of pertinent provisions of the statute of this State.

We are in accord with the conclusion of the circuit judge that his jurisdiction on the statutory review of the holdings and findings of the public service commission did not extend to the issue sought to be raised as to the right of Commissioner Hunt to sign the opinion and order of the commission. Assuming, however, that such issue may properly be given consideration, the conclusion may not be avoided that Commissioner Hunt was at least a *de facto* officer, and as such entitled to take part in the business of the commission so long as he continued to act in that capacity and pending the appointment of his successor.

Mr. Hunt was appointed a member of the commission by the governor of the State for a term expiring July 2, 1957. It is claimed that in May preceding he had decided to remove to California, that he caused his household goods to be taken to that State the latter part of said month, and that certain acts on his part indicated that he intended to depart from the State of Michigan. However, it appears that he was in Lansing a portion of the time prior to August 8, 1957, on which day his successor was appointed, and that during such period he participated in the proceedings of the public service commission, that his right to so do was not questioned, and that so far as the record is concerned he was regarded by the other members of the commission, and by the public generally, as entitled to perform the duties of his office. It has been repeatedly held that under comparable circumstances one in actual occupancy of an office and performing its duties under apparent claim of right to do so is not subject to have his acts challenged notwithstanding

that a vacancy may exist, from the legal standpoint, which may be filled by appointment.

Appellants rely on the provisions of CLS 1956, § 201.3 (Stat Ann 1956 Rev § 6.693), which reads as follows:

"Every office shall become vacant, on the happening of any of the following events, before the expiration of the term of such office:

"1. The death of the incumbent;

"2. His resignation;

"3. His removal from office;

"4. His ceasing to be an inhabitant of this State; or, if the office be local, of the district, county, township, city, or village, for which he shall have been appointed, or within which the duties of his office are required to be discharged;

"5. His conviction of any infamous crime, or of any offense involving a violation of his oath of office;

"6. The decision of a competent tribunal, declaring void his appointment, or,

"7. His refusal or neglect to take his oath of office, or to give, or renew any official bond, or to deposit such oath, or bond, in the manner and within the time prescribed by law."

Emphasis is placed on the provision of subdivision 4 of the quoted section declaring that an office becomes vacant if the incumbent ceases to be an inhabitant of the State, or, in the case of local office, of the political subdivision or municipality within which his duties must be performed. It is also declared in subdivision 7 that failure to take the oath of office or to give or renew an official bond or comply with similar requirements has like effect. However, in *People v. Matthews*, 289 Mich 440, it appearing that the defendant had actually occupied the office of justice of the peace for a period of several years, although he had not complied with

statutory requirements imposed by the charter of the city in which he was elected, it was held that he was an officer *de facto*. In support of such conclusion the Court cited prior decisions of like import in *People* v. *Payment,* 109 Mich 553, and *People* v. *Sanders,* 139 Mich 442. The Court also quoted (pp 447, 448) with approval from 46 CJ, Officers, § 366, p 1053, as follows:

" 'An officer *de facto* is one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law. A person will be held to be a *de facto* officer when, and only when, he is in possession, and is exercising the duties, of an office; his incumbency is illegal in some respect; he has at least a fair color of right or title to the office, or has acted as an officer for such a length of time, and under such circumstances of reputation or acquiescence by the public and public authorities, as to afford a presumption of appointment or election, and induce people, without inquiry, and relying on the supposition that he is the officer he assumes to be, to submit to or invoke his action; and, in some, although not all, jurisdictions, only when the office has a *de jure* existence.' "

In 43 Am Jur, Public Officers, § 471, pp 225, 226, the general holding with reference to the matter is summarized as follows:

"Lord Ellenborough has defined an officer *de facto* as one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law, and this definition has been quoted with approval in many cases. Another approved definition is that a *de facto* officer is one whose title is not good in point of law, but who is in fact in the unobstructed possession of an office and is discharging its duties in full view of the public in such manner and under such circumstances as not to present the appearance of being an intruder or usurper. A still more comprehensive definition is as follows:

A person is a *de facto* officer where the duties of the office are exercised (1) without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be; (2) under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like; (3) under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public; (4) under color of an election or an appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such. And this has been widely accepted. Numerous other definitions may be found in judicial opinions."

Of like import is 67 CJS, Officers, § 135, p 438 *et seq.*

In *Attorney General, ex rel. Dingeman, v. Lacy,* 180 Mich 329, this Court held invalid PA 1913, No 186, which undertook to create a court of domestic relations in the county of Wayne. After reaching the conclusion that the office had not been lawfully created, it was said (p 342):

"Inasmuch as respondent, under the authority of a legislative enactment, assumed to exercise a portion of the jurisdiction of the circuit court, which is a constitutional court, we are of opinion that such of his judicial acts as are within the jurisdiction of the circuit court should be considered as those of a *de facto* judge, not open to question upon jurisdictional grounds."

The general rule of public policy inherent in an issue of the character here involved was recognized by the Court in *People* v. *Townsend,* 214 Mich 267

(16 ALR 902). There the defendant, prosecuted on a criminal charge, moved to quash the information filed against him on the ground that the examining magistrate was without jurisdiction. Commenting thereon it was said (pp 270, 271):

"The examination complained of was held before the municipal justice of the city of Kalamazoo. We are not inclined to stop and examine the question of whether such magistrate had authority to hold the office he in fact occupied and to which he had color of authority, but content ourselves with applying the rule that if the magistrate was a *de facto* officer his act in this public matter cannot be attacked in this proceeding nor his title to the office be here passed upon. Upon the high ground of public policy and to prevent a failure of public justice we follow the salutary rule that while one is in public office, exercising the authority thereof under color of law, we cannot, except in a direct proceeding to test his right to the office, pass upon the question here raised, and besides it would avail defendant nothing because there is no difference between the acts of *de facto* and *de jure* officers, so far as the public interests are concerned. The point is ruled adversely to defendant in *Gildemeister* v. *Lindsay,* 212 Mich 299; *People* v. *Kongeal,* 212 Mich 307; *Auditors of Wayne Co.* v. *Benoit,* 20 Mich 176 (4 Am Rep 382). Even though the law creating a judicial office be declared void the acts of an official thereunder will be upheld as the acts of a *de facto* officer. *Attorney General, ex rel. Dingeman,* v. *Lacy,* 180 Mich 329."

The foregoing statement was approved in *People* v. *Buckley,* 302 Mich 12, and *People* v. *Russell,* 347 Mich 193. See, also, *Case* v. *Liquor Control Commission,* 314 Mich 632.

Because of the nature of the case the decision in *In re Collins,* 75 App Div 87 (77 NYS 702), is of interest. Involved was the validity of the incorporation of a village. The town clerk who had given

the notice of the election had removed with his family to another county and had engaged in business there. It was conceded that he had in fact become a legal resident of the town to which he had so removed. However, he continued to perform all the duties of the office of town clerk in the town from which he had removed himself and family. No other person was chosen during such period to succeed him, and he continued to perform his duties and to draw his pay. It was claimed that because of the change of residence the office became vacant, and therefore that the notice of the election was given by an unauthorized person and was void. The court recognized that he was not a *de jure* incumbent of the office, but held that because he had continued in possession thereof under an existing appearance of right, that as the public generally regarded him as the town clerk, and that he had acted as such without question, he was a *de facto* officer and, hence, the notice given by him was valid. In point also is *Rockingham County* v. *Luten Bridge Co.* (CCA 4), 35 F2d 301 (66 ALR 735).

As before suggested, we are not here concerned with whether a successor might have been appointed to the office of commissioner on the theory that a vacancy existed, nor with the question whether a court in a *quo warranto* proceeding might properly have concluded that the office had been vacated or abandoned. Actions of such nature were not undertaken and Mr. Hunt continued up to and including the 6th day of August, 1957, to perform the duties of his office without his right so to do being questioned from any source. Under prior decisions of this Court and under the general rule recognized in other jurisdictions he was a *de facto* officer and his action in signing the order of August 6, 1957, from which plaintiffs appealed to the circuit court, is not subject to attack in this proceeding. Counsel

for appellants have cited *People, ex rel. Attorney General,* v. *Village of Highland Park,* 88 Mich 653, which was a proceeding in *quo warranto* to test the legality of the existence of defendant municipal corporation. In view of the facts there involved the case may not be considered as bearing on the issue in the instant proceeding.

Appellants further contend that the public service commission failed to observe procedural rules in connection with the hearing, and that in effect there was a denial of due process of law. As before stated, the proofs were taken before William L. King, an employee of the commission. It is not claimed that the statute did not grant full authority with reference to the taking of the testimony in such manner, but it is said that an order should have been entered in the records of the commission expressly declaring the reference to Mr. King. Apparently such an order was not entered. No claim is made that any party desiring to offer proofs was precluded from doing so because of the failure to enter a formal order, or that there was any misunderstanding on the part of any of the plaintiff-appellants with reference to the conducting of the hearing.

It further appears that the parties opposing the granting of the relief sought by United Parcel Service requested that they be furnished with copies of Mr. King's report, that they be given an opportunity to file objections thereto, and that an oral argument should be allowed. Such requests were not granted. On behalf of the commission it is pointed out that the statute indicating the procedure to be followed does not require the submission to parties to the proceeding of copies of findings of the nature submitted by Mr. King. Neither is there any mandatory provision with reference to an oral argument on such findings. It may not be said, in consequence, that the basic requirements as to

procedure were violated in the respects of which appellants complain. See, in this connection, *Peoria Braumeister Co.* v. *Yellowley* (CCA 7), 123 F2d 637.

It is further insisted that the order was invalid because it did not show the transmittal and receipt by the commission of the report submitted by Mr. King. It does not appear from the statute that such recital was required, nor that a specific order reciting the transmittal and receipt of such a report must be entered. Quite possibly, as a matter of procedure, such an order is desirable as a part of the record of the proceeding, but in the instant case we are not impressed that appellants were deprived of any substantial right. The objections raised appear to be technical in nature rather than substantial.

It must be borne in mind that the issues in the case were framed by the application of the United Parcel Service and the answers thereto. In other words, we are not dealing with an investigation of such a nature as that the inquiry is general rather than specific. In proceedings involving issues not clearly defined, opportunity for proper and orderly clarification should be given. So far as the instant case is concerned, we think the comment of the supreme court of the United States in *Consolidated Edison Co.* v. *National Labor Relations Board,* 305 US 197, 228 (59 S Ct 206, 83 L ed 126), is applicable:

"It cannot be said that the board did not consider the evidence or the petitioners' brief or failed to make its own findings in the light of that evidence and argument. It would have been better practice for the board to have directed the examiner to make a tentative report with an opportunity for exceptions and argument thereon. But, aside from the question of the brotherhood contracts, we find no basis for concluding that the issues and contentions were not clearly defined and that the petitioning

companies were not fully advised of them. *National Labor Relations Board* v. *Mackay Radio & Telegraph Co.*, 304 US 333, 350, 351 (58 S Ct 904, 82 L ed 1381). The points raised as to the lack of procedural due process in this relation cannot be sustained."

On the record before us it may not be said that the questions involved in the proceeding before the commission were not given due and proper consideration by that body, or that the members of the commission did not evaluate the testimony in the light of the claims of the respective parties and arrive at definite conclusions as to the merits of each issue. We are in accord with the conclusion of the circuit judge that there was no lack of due process in this regard. Bearing in mind the nature of the proceeding we think the rights of all parties were given due consideration and that the basic requirements prescribed by the legislature for such proceeding were observed. The claim that the order of August 6, 1957, should be held invalid because of a lack of due process of law in connection with the proceedings before the commission is not tenable. See, in this connection, *United States* v. *Morgan*, 313 US 409 (61 S Ct 999, 85 L ed 1429).

Appellants also attack the order of August 6, 1957, on the ground that under the authority granted to it the United Parcel Service is merely a contract carrier rather than a common carrier. Such claim is predicated on the limitations of said order with reference to the size of the packages or parcels that may be transported and the further restriction that commodities sold by department stores and specialty shops shall not be transported to or from the customers thereof or between such stores and shops and branches and warehouses. Emphasis is also placed on the fact that United Parcel Service, in addition to the regular rates, makes a weekly charge

of $2.00 for daily service without reference to the number of packages or parcels that a shipper may have for transportation. It is argued in substance that because of these factors United Parcel Service does not come within the recognized classification of common carrier of personal property.

Section 1 of article 1 of the motor carrier act (CL 1948, § 475.1, as last amended by PA 1959, No 232 [Stat Ann 1959 Cum Supp § 22.531]) states in subdivision (f) thereof:

" 'Common motor carrier of property' means any person who holds himself out to the public as being engaged in the business of a common carrier as at the common law, either directly or through any device or arrangement, including those who operate over fixed routes or between fixed termini, in the transportation by motor vehicle from place to place upon or over the highways of this State, the property, or any property, or any class thereof of others who may choose to employ him."

It is apparent from the language quoted that the legislature in defining common motor carrier did not contemplate that such carrier should engage in the transportation by motor vehicle of all kinds of personal property for anyone desiring service without limitation or restriction. In *Terminal Taxicab Co.* v. *District of Columbia,* 241 US 252 (36 S Ct 583, 60 L ed 984), the question arose whether the plaintiff was a common carrier of passengers. In discussing the situation, it was said (pp 254, 255):

"The next item of the plaintiff's business, constituting about a quarter, is under contracts with hotels by which it agrees to furnish enough taxicabs and automobiles within certain hours reasonably to meet the needs of the hotel, receiving the exclusive right to solicit in and about the hotel, but limiting its service to guests of the hotel. We do not perceive that this limitation removes the public char-

acter of the service, or takes it out of the definition in the act. No carrier serves all the public. His customers are limited by place, requirements, ability to pay and other facts."

In *Michigan Public Utilities Commission* v. *Krol,* 245 Mich 297 (PUR 1929C, 658), suit was brought by the plaintiff to enjoin the defendant from operating as a common carrier of freight between Sault Ste. Marie and Detour, in Chippewa county, without having been granted authority by plaintiff so to do. It was defendant's claim that he was a private carrier and, hence, was not violating the statute in the carrying on of his business operation. The relief sought was granted. The Court (p 303) quoted with approval from *Michigan Public Utilities Commission* v. *Duke,* 266 US 570, 577 (45 S Ct 191, 69 L ed 445, 36 ALR 1105), where it was said:

" 'One bound to furnish transportation to the public as a common carrier must serve all, up to the capacity of his facilities, without discrimination and for reasonable pay.' "

The Court (pp 302, 303) also quoted with approval the definition of the term "common carrier" as stated in *Jackson Architectural Iron Works* v. *Hurlbut,* 158 NY 34, 38 (52 NE 665, 70 Am St Rep 432), as follows:

" 'A common carrier is one who, by virtue of his calling, undertakes, for compensation, to transport personal property from one place to another for all such as may choose to employ him; and every one who undertakes to carry for compensation the goods of all persons indifferently, is, as to liability, to be deemed a common carrier.' "

The definitions quoted obviously imply that the common carrier is not required to furnish facilities to transport all classes and kinds of merchandise

without limitation as to territory served. In other words, the holding out by a common carrier need not be unlimited in character. The obligation that he assumes to serve the public is commensurate with his holding out. The defendant public service commission concluded that it was authorizing United Parcel Service to carry on business as a common carrier, and we are not prepared to say that such conclusion was unwarranted on the basis of either the facts or the law.

The general principles to be applied in determining whether one engaging in the transportation of goods for hire is a common carrier is stated in 13 CJS, Carriers, § 3, pp 26–28, as follows:

"The test by which it is determined whether a party is a common carrier of goods is: (1) He must be engaged in the business of carrying goods for others as a public employment, and must hold himself out as ready to engage in the transportation of goods for persons generally as a business, and not as a casual occupation. (2) He must undertake to carry goods of the kind to which his business is confined. (3) He must undertake to carry by the methods by which his business is conducted, and over his established roads. (4) The transportation must be for hire. The distinctive characteristics of a common carrier are those stated in the first test set out above, viz: That he holds himself out as ready to engage in the transportation of goods for hire as a public employment, and not as a casual occupation, and that he undertakes to carry for all persons indifferently, within the limits of his capacity and the sphere of the business required of him, so that he is bound to serve all who apply, and is liable for refusal, without sufficient reason, to do so."

It may be noted also that in *Railway Express Agency* v. *United States* (SD NY), 153 F Supp 738, in which the plaintiff sought annulment of orders

of the interstate commerce commission granting a
certificate of public convenience and necessity to
United Parcel Service to operate as a common car-
rier by motor vehicle of general commodities, with
certain exceptions, over described irregular routes,
plaintiff's complaint was dismissed.  As in the case
at bar the orders issued authorized a charge of $2.00
per week for pickup service.  It was pointed out,
citing *American Trucking Associations, Inc.,* v.
*United States,* 326 US 77, 86 (65 S Ct 1499, 89 L ed
2065), that the weekly charge was not a factor on
which an objection against the granting of a certifi-
cate of convenience and necessity might be based.
The Court also concluded that on the basis of the
proofs convenience and necessity had been estab-
lished.  Motion to affirm the judgment entered in
the district court was granted in *Railway Express
Agency, Inc.,* v. *United States,* 355 US 270 (78 S Ct
330, 2 L ed 2d 257).

With respect to the power of the commission to
grant a certificate of convenience and necessity of
the character here involved it is significant to note
that article 2, § 5, of the motor carrier act (CL 1948,
§ 476.5 [Stat Ann § 22.538]) specifically provides
in part that:

"Said application may be granted, in whole or in
part, and a certificate issued upon such lawful terms
and conditions as said commission may impose, and
subject to such rules and regulations as it has or
may hereafter lawfully prescribe, for the whole or
for only the partial exercise of the privilege sought."

The obvious intent of the provision quoted is con-
sistent with holdings of the interstate commerce
commission in proceedings involving the issuance
of certificates of public convenience and necessity
to common carriers by motor vehicles under the
Federal act.  *United Parcel Service, Inc., Common*

*Carrier Application,* 68 ICC 199; *Walter M. Chambers Extension—Liquid Commodities,* 69 ICC 347. Without pursuing the discussion further, we conclude that the order of the Michigan public service commission of August 6, 1957, is not open to attack on the ground that the certificate of convenience and necessity granted to United Parcel Service authorizes operations merely as a contract carrier rather than as a common carrier by motor truck.

This brings us to a consideration of the question raised by appellants as to the validity of the order of August 26, 1957, exempting United Parcel Service from the provisions of the minimum rate schedule of 1950, above mentioned. It is claimed in substance that such action was subject to the provisions of article 5, § 18, of the motor carrier act (CL 1948, § 479.18 [Stat Ann § 22.583]), and that the procedure therein prescribed was not followed by the commission. In part the section cited reads as follows:

"The commission may upon application of any person or any motor carrier, or upon its own motion, and upon at least 10 days' notice to the parties affected thereby, for good cause, and after an opportunity to be heard, revoke, suspend, alter, amend or modify any and all of its findings or orders; but no certificate or permit shall be amended, altered, modified, revoked, suspended, or impaired, except only after like notice and opportunity to be heard and upon clear proof of good, just, and sufficient cause."

On behalf of defendant commission and intervening defendant United Parcel Service it is claimed that said provision is not applicable to the exemption order in question. It is claimed in substance that it had been the practice of the commission to grant such exemption orders on application of a motor carrier without giving notice to other car-

riers rendering service in the territory affected. It is said also that some of the appellants in the instant case have sought and obtained such orders without observance of the restrictions imposed by the statute now invoked. Presumably such instances are referred to solely for the purpose of showing the interpretation that has been consistently observed in the past with reference to the type of proceedings subject to the procedure indicated in the language quoted.

It appears from the record before us that the matter of rates to be charged by United Parcel Service in its operations under the certificate of convenience and necessity that it sought was involved, to some extent, in the hearing leading to the issuance of such certificate. It was not directly involved in such proceeding for the reason that the schedule of rates that it was required to file was not then before the commission, and the determination of the issue of public convenience and necessity did not depend thereon. Rather, the primary issue before the commission necessitated proofs as to the services rendered in the area affected by other carriers therein, and the benefits that might accrue to the shipping public from the services that the applicant for the certificate established that it was prepared to render.

In *American Trucking Associations, Inc.,* v. *United States,* 326 US 77, 86, 87 (65 S Ct 1499, 89 L ed 2065), a proceeding for the issuance of a certificate of convenience and necessity for motor truck operation by railroad, it was said:

"Appellants have other objections to the order of the commission which have been considered and a few words need to be said about only 2 of them. It is objected that the railroad as a motor carrier has been permitted through other proceedings to file illegal tariffs, violative of section 217 of part 2 of the interstate commerce act, and has been improp-

erly exempted by the commission from certain accounting requirements of section 220 of the same part to which the other motor carriers are subject.* These are obviously not grounds upon which appellants can base an argument against the grant of a certificate of convenience and necessity."

In *Railway Express Agency* v. *United States* (SD NY), *supra,* 741, it was pointed out that the order of the interstate commerce commission granting to United Parcel Service a certificate of public convenience and necessity pursuant to the Federal act did not deprive the plaintiff of the right to challenge the legality of the rate schedules filed pursuant to said act. It was further stated that such administrative remedy not having been exhausted complaint to the courts was premature, citing in connection with such observation *National Water Carriers Association* v. *United States* (SD NY), 126 F Supp 87, 90. In the case at bar it does not appear that appellants or any of them have sought to challenge in a proceeding before the commission the rate schedules filed by intervening defendant.

Counsel for appellants have cited *In re Application of Joe Brown & Sons,* 273 Mich 652. In that case it appears that the commission granted an application for an extension of service and entered its order accordingly. Subsequently said order was amended as the result of an application filed by other carriers in the area concerned. It was pointed out by this Court in its opinion that the amendatory order resulted in a change in substance of the order as first entered, that compliance with article 5, § 18, of the motor carrier act, above cited, was requisite, and, inasmuch as compliance with the statute was not shown, the order of the commission was set aside with directions to reinstate the former

---

* See, currently, 49 USC (1958 ed), §§ 317, 320.—Reporter.

order. It is obvious that the facts in the case were of different nature than those involved in the case at bar. Here the order of August 26, 1957, exempting United Parcel Service from the minimum rate schedule as prescribed in 1950 was not a modification of such order nor was it a modification of the order of August 6, 1957, by which a certificate of public convenience and necessity was granted to intervening defendant. The exemption order was not invalid for the reason urged by appellants, and the trial judge was correct in so holding.

Without discussing the issues in the case in further detail our examination of the record before us indicates that neither of the orders involved in this appeal is invalid because of failure to follow the essential procedural requirements prescribed by statute or by rule of the commission, or because of failure to observe basic requirements of due process of law. Under the certificate of convenience and necessity issued to it United Parcel Service is a common carrier by motor truck, as the defendant commission has recognized. The order of August 6, 1957, is not open to objection in this proceeding because of the alleged lack of authority on the part of one of the members of the commission participating therein. The proofs received on the hearing which, as the opinion of the commission indicates, were given full and fair consideration furnish a proper basis in support of said order.

The trial judge found that the order of August 26, 1957, which exempted United Parcel Service from the operation of the minimum rate schedule of 1950, was not invalid because the appellants in this case were not notified of the application therefor. With such finding we are in accord. Such action by the commission did not modify or alter any of the provisions of the order of 1950. Such an order

had been considered by the commission in years past, and by motor carriers seeking exemption therefrom, as not within the purview of the statute cited governing the procedure to be observed when an application is made to it for the revocation or modification of a prior order that may affect parties other than the applicant. Obviously, merely exempting the intervening defendant from the operation of the minimum rate schedule did not in and of itself operate to the prejudice of the appellants in the present case. If rate schedules have been filed, or are hereafter filed, by United Parcel Service that may be claimed to be prejudicial, if approved and placed in operation, to any of these appellants or to other motor carriers, they have their remedy before the commission, as above pointed out. *Railway Express Agency* v. *United States, supra; National Water Carriers Association* v. *United States, supra.* Insofar as this case is concerned, appellants are not entitled to complain of an order by which they were not aggrieved and which is not subject to the provisions of the procedural statute on which they rely.

The decree of the trial court should be affirmed, with costs to defendants.

KELLY, J., concurred with CARR, J.

SOURIS, J. I concur with Mr. Justice CARR's opinion so far as it relates to the validity of the order of August 6, 1957. However, I must respectfully dissent therefrom so far as it relates to the order of August 26, 1957, exempting United Parcel Service from the provisions of the minimum rate schedule of 1950.

In the trial court's opinion can be found the following statement of facts concerning the August 26, 1957, order:

"In 1950 the commission issued an order (D 3476, Supp 6), setting minimum rates for contract and

common carriers of property, and exempting there-
from certain territory, certain commodities and cer-
tain carriers.

"On August 15, 1957, and after the issuance of
the opinion and order of August 6, 1957, United
Parcel filed a petition seeking an exemption from the
above-mentioned order. On August 26, 1957, the
commission caused the petition to be published in
its information bulletin, and *by order dated the same
day,* granted said petition. On August 28, 1957, the
plaintiffs served written notice on the commission,
requesting that a hearing be held and no action be
taken without providing plaintiffs an opportunity to
be heard. (Emphasis added.)

"On September 5, 1957, the plaintiffs, without a
hearing thereon having been granted them, were
served with the order exempting United Parcel from
the minimum rate order. On September 19, 1957,
the original plaintiffs filed an amended bill of com-
plaint herein, appealing from the exemption order."

Article 5, § 18, of the motor vehicle carrier act, CL
1948, § 479.18 (Stat Ann § 22.583), provides in part:

"The commission may upon application of any
person or any motor carrier, or upon its own motion,
and upon at least 10 days' notice to the parties af-
fected thereby, for good cause, and after an oppor-
tunity to be heard, revoke, suspend, alter, amend or
modify any and all of its findings or orders; but no
certificate or permit shall be amended, altered, modi-
fied, revoked, suspended, or impaired, except only
after like notice and opportunity to be heard and
upon clear proof of good, just, and sufficient cause."

While noting that the commission's order of Au-
gust 26, 1957, was written in terms of an amendment
of the minimum rate order, the trial court con-
cluded:

"That amendment so-called does not change the
substance of the order of August 26th in any respect

whatever, and in our opinion is not such an amendment of an order as comes within the provisions of CL 1948, § 479.18 (Stat Ann § 22.583). Had the amendment been one of substance, then we think plaintiffs' position would have been well taken, but it is obviously not such an amendment."

Reliance was placed by the trial court on language contained in this Court's opinion in *In re Application of Joe Brown & Sons,* 273 Mich 652, 656, where it was held that a change of the substance of a former order could only be done in strict compliance with section 18 of the act, above quoted. In the case at bar the trial court concluded that such language indicated that compliance with article 5, § 18, was not required if the change is not one of substance.

I cannot agree that exemption of a carrier's operations previously subject to the minimum rate order is not a change in substance. The exempted carrier would not contend (and defendant United Parcel Service of Detroit, Inc., does not argue before this Court, except by reference to the trial court's opinion) that the order of August 26, 1957, was not a change of substance as it related to it. The change authorized by the exemption order permitted defendant carrier to file a rate schedule, and to charge rates, below the rates permitted to be charged by its competitors. On the other hand, it cannot be said that the August 26, 1957, order was not a change in substance affecting defendant carrier's competitors, including plaintiffs. The change authorized by the exemption order permitted defendant carrier to assume a competitive advantage over them solely because it freed defendant carrier from the minimum rate schedule which still bound them. When an administrative agency undertakes to establish minimum rates for a regulated industry, it must

do so uniformly, unless good cause is shown for doing otherwise.

This principle was recognized by the commission when it promulgated its minimum rate order in the following statement of purposes:

"We find that an order prescribing the rates and charges to be assessed and observed, and classifications and the rules and regulations to govern all types of motor carriers (except as hereinafter provided) is both necessary and desirable in the public interest to remove unjust and unreasonable rates, charges, classifications, rules and regulations, and practices, to enable said carriers to provide safe and adequate service, facilities and equipment for the transportation of property in intrastate commerce, to foster sound economic conditions in the transportation of property by said carriers, and to promote adequate, economic, and efficient service by motor carriers within this State at reasonable rates without unjust discrimination, undue preference or advantage, or unfair or destructive competitive practices."*

Article 5, § 18, of the act permits amendment of prior orders, but only for good cause, upon notice to affected parties and after an opportunity for hearing. In the absence of the prescribed notice and hearing, the order of August 26, 1957, is invalid.

Defendants contend that other exemption orders have been issued by the commission without hearing. Testimony was offered relating to only 4 or 5 such orders issued without hearing, but in none was there shown to be an absence of notice. Furthermore, the supervisor of the commission's rates and tariffs section testified that the general policy of the commission was to hold hearings before issuing an order modifying the minimum rate order whenever there

---

* Minimum rate order, D–3476, Supp 6, dated April 10, 1950.—REPORTER.

was any objection made to a petition for exemption. The evidence discloses no valid reason for the commission's failure to comply with the plaintiffs' request for a hearing as the statute requires.

I would affirm the decree of the trial court as it relates to the order of August 6, 1957, reverse the decree as it relates to the order of August 26, 1957, and remand for the entry of a decree in compliance herewith. I would award no costs, none of the parties having fully prevailed.

Smith, Black, and Edwards, JJ., concurred with Souris, J.

Dethmers, C. J., and Kavanagh, J., did not sit.