PEOPLE *v*. TOWNSEND.

1. JUSTICES OF THE PEACE—RIGHT TO HOLD OFFICE NOT SUBJECT TO
   COLLATERAL ATTACK—ACTS OF DE FACTO OFFICER VALID.
   In a prosecution for involuntary manslaughter, the right of
   the municipal justice, who issued the warrant and before
   whom the examination was held, to hold the office will not
   be inquired into, since the acts of a *de facto* officer are
   valid.

2. CRIMINAL LAW—INFORMATION—RIGHT OF ACCUSED TO BE IN-
   FORMED OF OFFENSE CHARGED.
   The right of an accused to be fully informed of the nature of
   the charge against him relates, so far as the information is
   concerned, solely to the charge and not to the evidence in
   support thereof.

3. SAME—INVOLUNTARY MANSLAUGHTER—ACTS RELIED UPON.
   An information charging defendant with involuntary man-
   slaughter by reason of his driving his automobile while in
   an intoxicated condition, forbidden by Act No. 164, Pub.
   Acts 1917, and thereby causing the death of deceased, *held*,
   sufficient, although the specific act or acts which brought
   about the death were not set out; defendant's contention
   that said offense was not *malum in se* but merely *malum
   prohibitum* because forbidden by statute under a penalty
   not being tenable.

4. SAME—VOLUNTARY INTOXICATION MALUM IN SE.
   Voluntary intoxication is an offense not only *malum pro-
   hibitum* but *malum in se*, wrong in and of itself.

5. SAME—INVOLUNTARY MANSLAUGHTER—INFORMATION—SUFFICIEN-
   CY.
   In an information charging involuntary manslaughter com-
   mitted while perpetrating an unlawful act not amounting
   to a felony, it is sufficient to allege the unlawful act with
   sufficient particularity to identify it, and then to charge
   that as a consequence the defendant caused the death of
   the deceased, and there is no need to aver in detail the
   specific acts of the accused; while in case of manslaughter
   arising out of some negligence or fault in doing a lawful

On the question of intoxication of person operating automobile
in highway, see note in L. R. A. 1917A, 313;
Intoxication as affecting homicide by negligent operation of
automobile, see note in L. R. A. 1918B, 957.

act in a grossly negligent manner and from which death results, the duty which was neglected or improperly performed must be charged as well as the acts of the accused constituting failure to perform or improper performance.

6. SAME—CONVICTION OF INFERIOR OFFENSE ON SAME TRANSACTION NOT A BAR—FORMER JEOPARDY.

Defendant's contention that his conviction in the municipal court, after the accident and before the death of deceased, of the crime of driving an automobile while intoxicated on the occasion in question is a bar to the prosecution for manslaughter, claiming former jeopardy, is without merit, since the former conviction was for a misdemeanor and did not and could not include the present charge.

7. SAME—DATE OF OFFENSE CHARGED—STATUTES—INFORMATION— SUFFICIENCY.

Where the complaint and the second count of the information charged the offense to have been committed on the 20th, the date deceased died, while the third count charged the offense to have been committed on the 8th, the date of the accident, defendant's contention that he could not be convicted of manslaughter committed on the 8th because he had not been so charged is without force under the statute (3 Comp. Laws 1915, § 15746), since time is not of the essence of the offense.

8. SAME—TRIAL—INSTRUCTIONS—DEFENSES—THAT DIFFERENT MEDICAL TREATMENT WOULD HAVE PREVENTED DEATH NO DEFENSE.

Defendant was not entitled to have the case submitted to the jury under the theory that he would not be guilty of manslaughter if different or more skilful medical treatment might or would have prevented the death, since it would be no defense to show that other or different medical treatment might or would have prevented the natural consequences flowing from the wounds inflicted through his culpable negligence.

9. HOMICIDE—INVOLUNTARY MANSLAUGHTER WHILE INTOXICATED— INTENT.

It is not the law that one who commits the crime of manslaughter while under voluntary intoxication and because of such intoxication must be sober enough to fully realize that in his intoxicated condition he might do something to kill another; intoxication being the gravamen of his

offense and the greater the degree thereof the more aggravated the offense; intent not being involved.

10. CRIMINAL LAW—PLEA OF GUILTY—EVIDENCE—SUFFICIENCY.
Where defendant was convicted in the municipal court, on his plea of guilty, of the misdemeanor of driving his car on the occasion in question, while intoxicated, and urged such conviction in bar of this prosecution, it cannot be said that there was no evidence to show that he was driving the car.

Exceptions before judgment from Kalamazoo; Weimer (George V.), J. Submitted April 15, 1921. (Docket No. 124.) Decided June 6, 1921.

Glenn Townsend was convicted of involuntary manslaughter. Affirmed.

*Harry C. Howard,* for appellant.

*Merlin Wiley,* Attorney General, *Stephen H. Wattles,* Prosecuting Attorney, and *Charles L. Dibble,* Assistant Prosecuting Attorney, for the people.

WIEST, J. Defendant was convicted of the crime of involuntary manslaughter and brings the case here upon exceptions before sentence. The evening of November 8, 1919, at the city of Kalamazoo, defendant, when intoxicated, took Agnes Thorne in his Cadillac 8 roadster and while driving on Lovers' Lane road the automobile left the roadway and struck a tree near the fence line, caving in the side of the car, tearing off one wheel and injuring Agnes Thorne so that she died November 20, 1919. Defendant was not injured and after the crash crawled from the wrecked car and produced a bottle out of which he took a drink and invited bystanders to have a drink, and he was so drunk that he apparently did not realize what had happened to his car or to his companion.

Agnes Thorne was taken from the scene of the accident to a hospital and given medical treatment and it was found that on the inside of her left thigh there was an injury consisting of a separation of the tissues for a distance of four or five inches and a similar laceration on the right thigh, and also an injury on the front of the right thigh and "brush wounds" on her body and a fracture of the right femur. The lacerations on both thighs extended through the fat and muscle tissues. The wounds had hair, excelsior, bits of clothing and dirt in them. From these wounds sepsis, or blood poisoning, developed, causing her death. She remained in the hospital under treatment from the time of the accident until her death.

At the point where the car left the roadway there is a curve, but the evidence shows that the car went straight ahead to the tree, without skidding and with headlights on and propelled at a high rate of speed.

When arraigned in the circuit court defendant stood mute and when brought to trial moved to quash the information on the ground that the warrant for his arrest was issued by and his examination held before and he was bound over for trial by one without the jurisdiction of an examining magistrate. The examination complained of was held before the municipal justice of the city of Kalamazoo. We are not inclined to stop and examine the question of whether such magistrate had authority to hold the office he in fact occupied and to which he had color of authority, but content ourselves with applying the rule that if the magistrate was a *de facto* officer his act in this public matter cannot be attacked in this proceeding nor his title to the office be here passed upon. Upon the high ground of public policy and to prevent a failure of public justice we follow the salutary rule that while one is in public office, exercising the authority

thereof under color of law, we cannot, except in a direct proceeding to test his right to the office, pass upon the question here raised, and besides it would avail defendant nothing because there is no difference between the acts of *de facto* and *de jure* officers, so far as the public interests are concerned. The point is ruled adversely to defendant in *Gildemeister* v. *Lindsay,* 212 Mich. 299; *People* v. *Kongeal,* 212 Mich. 307; *Auditors of Wayne Co.* v. *Benoit,* 20 Mich. 176 (4 Am. Rep. 382). Even though the law creating a judicial office be declared void the acts of an official thereunder will be upheld as the acts of a *de facto* officer. *Attorney General* v. *Lacy,* 180 Mich. 329.

Defendant also moved to quash the information claiming that it was not definite in its charges and did not apprise him of the offense upon which he was tried, and urges that the charge of operating his automobile while intoxicated and the consequent injuries to Agnes Thorne by reason of her being thrown from the car was not well pleaded unless it can be said that manslaughter is the natural or probable result to expect from driving a car while one is intoxicated, that the unlawful act set out in the information is *malum prohibitum* and not *malum in se,* and defendant contends that, where the unlawful act charged is a misdemeanor and merely *malum prohibitum* the specific act or acts which brought about the death must be set out in the information. Defendant also contends that the third count of the information does not follow the complaint in charging the date of the offense and, therefore, as to the date there charged he has had no examination. The right of an accused to be fully informed of the nature of the charge against him relates, so far as the information is concerned, solely to the charge and not to the evidence in support thereof. Under our system the law affords

an opportunity for a defendant to learn of the nature of the evidence against him at the examination.

We have examined the information with care and find it sufficient. Counsel is in error in assuming that the act of defendant in operating his automobile upon a public highway while intoxicated was an act merely *malum prohibitum* and not *malum in se*. It is true the statute forbids it and provides a penalty, but this in no way determines whether it is only *malum prohibitum*. The purpose of the statute is to prevent accidents and preserve persons from injury, and the reason for it is that an intoxicated person has so befuddled and deranged and obscured his faculties of preception, judgment and recognition of obligation toward his fellows as to be a menace in guiding an instrumentality so speedy and high-powered as a modern automobile. Such a man is barred from the highway because he has committed the wrong of getting drunk and thereby has rendered himself unfit and unsafe to propel and guide a vehicle capable of the speed of an express train and requiring its operator to be in possession of his faculties.

Voluntary intoxication is an offense not only *malum prohibitum* but *malum in se*, condemned as wrong in and of itself by every sense of common decency and good morals from the time that Noah in his drunkenness brought shame to his sons so that they backed in to cover his nakedness, and Lot's daughters employed it for incestuous purposes. Drunkenness was declared wrong in and of itself and punishment provided by the Israelites; by the ancient Chinese in an imperial edict about the year 1120 B. C., called "The announcement about drunkenness"; in ancient India by the ordinances of Manu. In Rome the censors turned drunken members out of the senate and branded them with infamy. In England 300 years ago drunkenness was pilloried as the root and foundation of many sins,

such as bloodshed, stabbing, murder, swearing and such like by the statute, 4 Jac. 1, chap. 5, and the ecclesiastical judges and officers were granted power to censure and punish offenders, and Bacon in his Abridgement of the common law lists drunkenness as one of the sins of heresy.   In Massachusetts Bay Colony in 1633, 1634, one Robte Coles, for drunkenness, was disfranchised and sentenced to wear a red letter D upon a white background for a year.   One of the acts passed at the first session of the general assembly of the Northwest Territory and approved December 2, 1799, provided a penalty for being drunk in a public highway.   Our statute, 2 Comp. Laws 1915, § 7774, declares drunkards to be disorderly persons, and section 15530 makes it an offense for any person to be drunk or intoxicated in any street or highway.

Voluntary drunkenness in a public place was always a misdemeanor at common law; and it was always wrong morally and legally.   It is *malum in se.   State v. Brown,* 38 Kan. 390 (16 Pac. 259).   It is gross and culpable negligence for a drunken man to guide and operate an automobile upon a public highway, and one doing so and occasioning injuries to another, causing death, is guilty of manslaughter.   It was unlawful for defendant to operate his automobile upon the public highway while he was intoxicated; made unlawful by statute, and wrong in and of itself, and it was criminal carelessness to do so and he is guilty of manslaughter, provided the death of Agnes Thorne was a proximate result of his unlawful act.

To make the information for involuntary manslaughter good it must allege that the accused was in the commission of some unlawful act or negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty, and that death resulted therefrom.   The distinction between involun-

tary manslaughter committed while perpetrating an unlawful act not amounting to a felony and the offense arising out of some negligence or fault in doing a lawful act in a grossly negligent manner and from which death results must be kept in mind upon the question of pleading. In the former case it is sufficient to allege the unlawful act with sufficient particularity to identify it and then to charge that as a consequence the defendant caused the death of the deceased, and there is no need to aver in detail the specific acts of the accused; but in case of manslaughter committed through gross or culpable negligence while doing a lawful act the duty which was neglected or improperly performed must be charged as well as the acts of the accused constituting failure to perform or improper performance. The information charged that defendant was engaged in the perpetration of an unlawful act at the time he injured Agnes Thorne so that she died.

The statute, Act No. 164, Pub. Acts 1917, forbids any intoxicated person to drive, operate or have charge of the power or guidance of any automobile upon any public highway and provides a penalty for violation of such law. The information clearly shows that defendant was engaged in an unlawful and culpably negligent act and that such act directly contributed to the death of Agnes Thorne. Such information is sufficient. *Surber* v. *State,* 99 Ind. 71; *State* v. *Radford,* 56 Kan. 591 (44 Pac. 19). Our attention is called to *State* v. *Gesas,* 49 Utah, 181 (162 Pac. 366), to the effect that the particular circumstances of the offense must be set forth in the information. In that case the court had under consideration a statute requiring an information for manslaughter to state the particular circumstances of the offense. In *State* v. *Watson,* 216 Mo. 420 (115 S. W. 1011) the sufficiency of an information charging manslaughter was before the court.

"This information charges that defendant carelessly, recklessly and with culpable negligence operated and propelled this automobile,    *    *    *    It was not, in our judgment, essential that the information should undertake to set out in detail in what such carelessness, recklessness and culpable negligence consisted."

See, also, *Schultz* v. *State,* 89 Neb. 34  (130 N. W. 972, 33 L. R. A. [N. S.] 403, Ann. Cas. 1912C, 495).

The information sufficiently charges that the unlawful act was the proximate cause of the accident and avers a direct relation between the unlawful act of operating the automobile while intoxicated and the accident.

After the accident and before the death of Agnes Thorne, defendant was convicted in the municipal justice court of the crime of driving an automobile while intoxicated.  Upon the trial defendant urged that such conviction was a bar to the prosecution for manslaughter, claiming former jeopardy.  There is no merit in this point.  The former transaction was for a misdemeanor and did not and could not include the charge here laid.  A conviction in an inferior court of a misdemeanor does not constitute former jeopardy so as to bar subsequent prosecution for a felony arising out of the same transaction.  The felony here charged being beyond the jurisdiction of the inferior court, and not included in any sense within the charge there laid, the defense of former jeopardy fails.  16 C. J. p. 271; *Diaz* v. *United States,* 223 U. S. 442 (32 Sup. Ct. 250, Ann. Cas. 1913C, 1138) ; *Crowley* v. *State,* 94 Ohio St. 88 (113 N. E. 658, L. R. A. 1917A, 661) ; *Morgan* v. *Devine,* 237 U. S. 632 (35 Sup. Ct. 712).  The transaction charged may be the same in each case, but if the offenses are different there is no second jeopardy for the same offense.  *Gavieres* v. *United States,* 220 U. S. 338 (31 Sup. Ct. 421).

"The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either does not exempt the defendant from prosecution and punishment under the other." *Morey* v. *Commonwealth*, 108 Mass. 433.

See, also, *State* v. *Ingalls*, 98 Iowa, 728 (68 N. W. 445) ; *State* v. *Hooker*, 145 N. C. 581 (59 S. E. 866) ; *People* v. *Parrow*, 80 Mich. 567.

The point is made that defendant could not be convicted of the crime of manslaughter committed on November 8th because he had not been so charged in the complaint and had had no examination as to such date. The complaint and the second count of the information charges the offense to have been committed on November 20th, the day Agnes Thorne died, while the third count charges the offense to have been committed November 8th, the day of the accident.

In *Vinegar* v. *Commonwealth*, 104 Ky. 106 (46 S. W. 510), it was urged that in a case of murder the time at which the crime is charged to have been committed is material and must be proved as laid, but the court held that:

"The rule was universal at common law that the allegation of time in an indictment was immaterial, except where the time of the commission of the act formed an ingredient of the offense, as in the case of Sunday offenses."

1 Michie on Homicide, § 133, says:

"It may be stated as a general rule that time is not an essential element of the crime of homicide, and the statement in the indictment for such offense as to when the crime was committed is not material further than to show that it was committed before the finding of the indictment, and within the statute of limitations.

The averment of the time of the commission of the offense, not being material, need not be proved as laid."

Time was not of the essence of the offense charged and under our statute, 3 Comp Laws 1915, § 15746, the point raised is without any force.

It is claimed that the injuries received by Agnes Thorne were not mortal and that her death might have been averted had she received different medical treatment, and it is insisted that the court should have left to the jury the question of whether she died from blood poisoning which might have been prevented by different treatment.

The trial judge instructed the jury:

"Was the operation of the automobile by the respondent in an intoxicated condition the proximate cause of her death, either standing alone by itself or in conjunction and in co-operation with some other cause or causes, such as mistreatment or blood poison, or did some new and independent cause intervene to produce the death. Was the treatment she so received the usual and ordinary treatment, or was it unusual and grossly erroneous, amounting to an independent cause of death intervening after the injuries? If the respondent operated the automobile while intoxicated and, as a direct and natural result thereof, Agnes Thorne received injuries from which she afterwards died, the respondent is guilty of manslaughter, although and notwithstanding you may find that there was an absence of the most skilful treatment, possibly, under such circumstances, and that everything was not done that the most modern and improved surgery might or would require or dictate.     *  ·  *     *

"On the other hand, if the wound in its inception is not necessarily fatal or mortal, as we say, but if it is one that is reasonably calculated to produce death, and death therefore ensues, the person responsible is not excused because of mistreatment on the part of the surgeons or others, or for any other cause that may contribute to produce death, unless such mistreatment or neglect or other causes constitutes a new and independent cause of death standing by itself, unless the

mistreatment, professional mistreatment and neglect is so grossly erroneous as in effect to cause and constitute a new and independent cause intervening after the injury and before death. If the injury is of such a nature as to not necessarily be fatal or mortal, as I say, but is one that is reasonably calculated to produce death, the person responsible for it is not excused and should not be found not guilty because it may appear that the best and most approved methods were not used in treating the patient. There is no hard, fixed rule as to what treatment the patient should receive. If the patient received the usual and ordinary treatment that is sufficient. If death follows, even though death may be due in part to the mistreatment, unless the mistreatment is so grossly erroneous as to amount to a new and independent cause of death, the person responsible for the injury, responsible for the death, is still responsible and should be found guilty."

This instruction, it is urged, confused in the minds of the jury the responsibility of the attending physician, practically saying to the jury that if they found Agnes Thorne had received the usual and ordinary treatment even though more modern practice had something better and safer, the defendant would be guilty. And it is stated:

"We conceive the rule to be that if the injuries are not fatal, that is, if they are not mortal wounds, then the mere sustaining of the injuries whereby there is an opportunity for infection, will not sustain a conviction of manslaughter."

The instruction given by the court clearly stated the law applicable to the question. The rule of law is well stated in 21 Cyc. p. 700:

"If a wound or other injury cause a disease, such as gangrene, empyema, erysipelas, pneumonia, or the like, from which deceased dies, he who inflicted the wound or other injury is responsible for the death. * * * He who inflicted the injury is liable even though the medical or surgical treatment which was the direct cause of the death was erroneous or unskilful, or al-

though the death was due to the negligence or failure
by the deceased to procure treatment or take proper
care of the wound.  The same is true with respect to
the negligence of nurses or other attendants.  This
rule is sometimes stated with the qualification that the
wound must have been mortal or dangerous; but it is
usually held that defendant is liable, although the
wound was not mortal."

Agnes Thorne died from blood poisoning arising
from wounds, and the medical treatment she received
was not an intervening, co-operative or contributing
cause of her death.  Defendant cannot exonerate him-
self from criminal liability by showing that under a
different or more skilful treatment the doctor might
have saved the life of the deceased and thereby have
avoided the natural consequences flowing from the
wounds.  Defendant was not entitled to go to the jury
upon the theory claimed unless the medical treatment
was so grossly erroneous or unskilful as to have been
the cause of the death, for it is no defense to show that
other or different medical treatment might or would
have prevented the natural consequences flowing from
the wounds.

The treatment did not cause blood poisoning; the
wounds did that, and the most that can be said about
the treatment is that it did not prevent blood poisoning
but might have done so had it been different. Defend-
ant cannot be heard to urge in exculpation of his crime
that the wounds inflicted through his culpable negli-
gence were not prevented from causing the death by
the treatment of the physician.

It is contended that the court should have instructed
the jury to find defendant not guilty if he started out
that night too intoxicated to appreciate his condition
and to know and appreciate that operating the car in
his condition would cause a condition of things which
would quite possibly make him guilty of manslaughter.
We do not conceive such to be the law of involuntary

manslaughter. The trial judge left to the jury the question of whether defendant knowingly and consciously operated his automobile while intoxicated. But it is said that under the evidence defendant was too drunk to appreciate what he was doing and the court should not have left any such issue to the jury. There was evidence that, when defendant started out that night with Agnes Thorne, he was not so intoxicated as to be unaware of what he was doing but at the time of the accident he was apparently incapable of appreciating what he had done.

It was not necessary for the people to show that defendant was able, while intoxicated, to reason and feel that in his intoxicated condition in operating the car he would quite possibly do something to make himself guilty of manslaughter.

The instruction complained of was more favorable to defendant than he was entitled to. It is not the law that one who commits the crime of manslaughter while under voluntary intoxication and because of such intoxication, must be sober enough to fully realize that in his intoxicated condition he might do something to kill another. No intent is involved in involuntary manslaughter, and defendant's intoxication was the gravamen of his offense and the greater the degree thereof the more aggravated his offense.

Defendant was convicted in the municipal court, on his plea of guilty, of a misdemeanor in driving his car on the occasion in question, while intoxicated, and, as before stated, urged such conviction in bar of this prosecution. Under such circumstances we can discover no merit in the point that there was no evidence to show he was driving the car.

We have examined the exceptions urged by defendant and feel that what we have said covers the points presented. References made by defendant to the case of *People* v. *Barnes*, 182 Mich. 179, have been duly

considered, but are not applicable to the charge or facts in this case, for here the unlawful act causing the death was *malum in se.*

We find no reversible error and the conviction is affirmed and the circuit court advised to proceed to judgment.

STEERE, C. J., and MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.