*573 Markman, J.
(concurring). Although I agree fully with the majority analysis, I write separately to elaborate on my views concerning § 11(A)(1) of the opinion.
I. PREVIOUS JURISPRUDENCE
Not only does the clear language of MCL 600.6304 support the majority interpretation, but I believe that this interpretation is consistent with this Court’s previous jurisprudence concerning an original tortfeasor’s liability in light of subsequent medical malpractice.[1] In the context of medical malpractice, it has long been held that negligent medical treatment of an injury is foreseeable and is ordinarily not a superseding cause that cuts off the causal contribution of the act that *574 caused the injury. In People v Townsend, 214 Mich 267; 183 NW 177 (1921), the defendant was driving drunk when he ran off the road and hit a tree, severely lacerating a passenger’s legs. Although the passenger was immediately taken to the hospital, her lacerations became infected because of medical malpractice committed by the hospital’s doctors, and she died twelve days later from blood poisoning. As a result of this death, the defendant was charged with and convicted of involuntary manslaughter. The defendant appealed his conviction, contending that his passenger’s death was a natural and probable result, not of the defendant’s drunk driving, but rather of the doctors’ negligence. This Court disagreed and stated:
“If a wound or other injury cause a disease, such as gangrene, empyema, erysipelas, pneumonia, or the like, from which deceased dies, he who inflicted the wound or other injury is responsible for the death... . He who inflicted the injury is liable even though the medical or surgical treatment which was the direct cause of the death was erroneous or unskilful, or although the death was due to the negligence or failure by the deceased to procure treatment or take proper care of the wound.. .. This rule is sometimes stated with the qualification that the wound must have been mortal or dangerous; but it is usually held that defendant is liable, although the wound was not mortal.”
. . . Defendant cannot exonerate himself from . .. liability by showing that under a different or more skilful treatment the doctor might have saved the life of the deceased and thereby have avoided the natural consequences flowing from the wounds. Defendant was not entitled to go to the jury upon the theory claimed unless the medical treatment was so grossly erroneous or unskilful as to have been the cause of the death, for it is no defense to show that other or different medical treatment might or would have prevented the natural consequences flowing from the wounds.
*575 The treatment did not cause blood poisoning; the wounds did that, and the most that can be said about the treatment is that it did not prevent blood poisoning but might have done so had it been different. [Id. at 278-279 (citation omitted).]
Accordingly, under Townsend, the original tortfeasor may be liable for a doctor’s subsequent negligence where such negligence merely failed to prevent a result that was a “natural consequence!] flowing from” such tortfeasor’s actions. See also People v Bailey, 451 Mich 657, 679; 549 NW2d 325 (1996) (“In the medical treatment setting, evidence of grossly negligent treatment constitutes evidence of a sole, intervening cause of death. Anything less than that constitutes, at most, merely a contributory cause of death, in addition to the defendant’s conduct.”).[2] Where evidence exists in a medical malpractice action that a doctor’s negligence was not the sole proximate cause of the plaintiffs injury, the trier of fact must be permitted to consider other proximate causes for such injury, including the plaintiffs own pre-treatment negligence.[3]
*576 n. COMPARATIVE NEGLIGENCE
In holding that in a medical malpractice action, the trier of fact should not be permitted to consider a plaintiffs pre-treatment negligence in apportioning fault, the Court of Appeals failed to recognize that § 6304 is predicated upon a comparative negligence scheme that “reduces the amount of the plaintiffs recovery, allocating liability in proportion to fault,” Jennings v Southwood, 446 Mich 125, 131; 521 NW2d 230 (1994), rather than upon a contributory negligence scheme that “act[s] as an absolute bar to plaintiffs who were only slightly at fault,” Klinke v Mitsubishi Motors Corp, 458 Mich 582, 607; 581 NW2d 272 (1998) (Kelly, J., dissenting).[4]
The Court of Appeals stated:
“It would be anomalous to posit, on the one hand, that a health provider is required to meet a uniform standard of care in its delivery of medical services to all patients, but permit, on the other hand, the conclusion that, where a breach of that duty is established, no liability may exist if *577 the patient’s own preinjury conduct caused the illness or injury which necessitated the care.”
[W]e conclude that the trial court did not err in ruling that the jury could not consider Shinholster’s potential negligence in causing the condition for which she sought medical treatment in the first place. Given the preventable nature of many illnesses, to accept a contrary position would allow many health-care professionals to escape liability for negligently treating ill patients. [Shinholster v Annapolis Hosp, 255 Mich App 339, 347-348; 660 NW2d 361 (2003), quoting Harvey v Mid-Coast Hosp, 36 F Supp 2d 32, 38 (D Maine, 1999).]
Stemming from its concern that “ ‘no liability may exist if the patient’s own preinjury conduct caused the illness or injury which necessitated the care,’ ” or that if a trier of fact was permitted to consider a plaintiffs pretreatment negligence in apportioning fault, “many health-care professionals [would] escape liability for negligently treating ill patients,” the Court of Appeals apparently believed that § 6304 set forth a contributory negligence scheme that barred a plaintiff from recovering for injuries resulting from a defendant’s negligence if the plaintiff was even slightly at fault for such injuries. These beliefs are unfounded because, as previously mentioned, § 6304 sets forth a comparative negligence scheme. Nothing in § 6304 states or implies that it constitutes a contributory negligence scheme. By adopting a comparative negligence scheme in § 6304, the Legislature recognized, as this Court did in Placek v Sterling Hts, 405 Mich 638, 660; 275 NW2d 511 (1979), that such doctrine “most nearly accomplishes the goal of a fair system of apportionment of damages ... [by] ‘truly distributing] responsibility according to fault of the respective parties.’ ” (Citation omitted.) The fact *578 that a doctor negligently undertook to treat an existing condition may be an important, and in many cases the overriding, factor in the trier of fact’s apportionment of fault in determining damages.[5] There is no reason to believe that a reasonable trier of fact will not accord that circumstance as much weight and consideration as it deserves in the particular case. However, there may sometimes be additional factors that will also be relevant in the apportionment of fault in determining damages, including evidence that the plaintiffs own conduct was either negligent, grossly negligent, or even intentional.[6]
III. ADMISSIBILITY OF EVIDENCE
The majority opinion states that “under § 6304, if a defendant presents evidence that would allow a reasonable person to conclude that a plaintiffs negligence *579 constituted a proximate cause of her injury and subsequent damages, the trier of fact must be allowed to consider such evidence when appointing fault.” Ante at 552. However, the majority opinion does not elaborate regarding what type of evidence may satisfy this standard. In my judgment, only where the defendant presents sufficient relevant evidence, which generally will be based on substantiated scientific or other documented, reliable, and verifiable findings, that a reasonable person could have foreseen that his injury and subsequent damages were the “natural and probable consequence” of his own conduct, will § 6304 require that the trier of fact determine whether such conduct “contributed” to the plaintiffs injury and subsequent damages, thereby offsetting to some degree the defendant’s exclusive liability.[7]
Further, section 6304 does not require a trier of fact to consider when the fault occurred, but merely whether the fault was “a proximate cause of damage sustained by a party.” That is, contrary to the beliefs of the trial court, Court of Appeals, and plaintiff, § 6304 does not apparently distinguish between a plaintiffs “pretreatment” and “post-treatment” negligence by providing that only the latter may be considered in apportioning fault and determining damages. Rather, § 6304 specifically requires that a trier of fact be permitted to consider the negligence of “each plaintiff,” be it pretreatment or post-treatment negligence, if such negligence was “a proximate cause” of the plaintiffs injury and subsequent damages.[8]
*580 Concern has been expressed at argument that, if a plaintiffs pre-treatment conduct may be considered under § 6304, this will enable a negligent doctor to avoid, at least in part, liability for his malpractice. For example, assume that a plaintiff, whose doctor has negligently failed to diagnosis her impending heart attack, files a medical malpractice action against the doctor on the basis of such negligence. At trial, the defendant attempts to offset a portion of his fault by introducing evidence that the plaintiff herself was a proximate cause of her heart attack because she had eaten a bag of potato chips daily for the past twenty years. In my judgment, the plaintiffs injuries and subsequent damages in such a circumstance would be far “too insignificantly related to” and “too remotely affected” by such conduct, and thus wholly inadequate to establish “a proximate cause” relationship between the plaintiffs conduct and her injury and damages. See Davis v Thornton, 384 Mich 138, 145; 180 NW2d 11 (1970). It is simply not a foreseeable, natural, or probable consequence that such conduct will result in a heart attack. The instant case is clearly (distinguishable because plaintiff here failed to regularly take medication that was prescribed by her doctor in order precisely to prevent the specific fatal injury that she suffered. That is, there is a far closer and more direct connection between plaintiffs negligent conduct and her injury, and thus I believe that such conduct may reasonably be *581 considered by a trier of fact as “a proximate cause” of her injury and subsequent damages.
In summary, in a medical malpractice action in determining whether the plaintiffs own negligence has been “a proximate cause” of her injury and damages, I believe that the trial court must ensure that the defendant has sustained its burden of proof in presenting relevant evidence, that such evidence is sustained by either scientific or other reliable and verifiable findings, and that such evidence demonstrates that the plaintiffs specific injury and damages were a genuinely foreseeable, natural, and probable consequence of her negligence. In cases such as this, in which a plaintiffs allegedly negligent conduct relates to a specific diagnosed condition, combined with a failure to comply with a doctor’s prescribed regimen for that specific condition, I agree with the majority that a question of fact for the jury regarding whether plaintiffs own conduct constitutes a sufficiently “proximate cause” of her own injury has been presented. Because in most instances I do not believe that such matters bear a “proximate cause” relationship to injuries and damages suffered by a medical malpractice plaintiff, I do not view § 6304 as allowing defendants to speculate about, or to engage in generalized investigations concerning, a plaintiffs lifestyle, exercise habits, or diet.
IV CONCLUSION
Here, there was one indivisible injury, Shinholster’s fatal stroke, allegedly caused by the separate, independent acts of Shinholster herself and defendants. Had the injury been caused by the separate, independent negligent acts of defendants and another tortfeasor, the liability of each would be determined by the fault attributable to each. See Townsend, supra at 279. *582 Under § 6304, the principle is the same where evidence exists that the negligence of Shinholster herself was a proximate cause of her fatal stroke and subsequent damages. Further, because the jury in this case has already determined that defendants breached their standard of care, a determination that I note defendants have not appealed, I would reverse the judgment of the Court of Appeals and remand this case for calculation of damages only.

 I believe that the distinctions plaintiff, the trial court, the Court of Appeals, and other courts have attempted to draw between “pretreatment” negligence and “post-treatment” negligence are, not only without statutory basis, but also irrelevant. Why should a doctor who has treated the plaintiff in the past be held less at fault for his negligence than a doctor who has not treated the plaintiff in the past? Take, for example, the instant case, where Dr. Normita Vicencio, approximately one year before plaintiffs fatal stroke, prescribed to plaintiff medication to lower her blood pressure. Assuming that plaintiff had sought additional treatment from Dr. Vicencio, instead of defendants, and assuming further that Dr. Vicencio had acted in the same alleged negligent manner as defendants, plaintiffs alleged negligence would be considered “post-treatment” negligence, and, thus, admissible under both the lower courts’ and plaintiffs interpretation of § 6304. However, because defendants had not treated plaintiff in the past, plaintiffs alleged negligence would be considered “pre-treatment” negligence, and, thus, inadmissible under both the lower courts’ and plaintiffs interpretation of § 6304. Accordingly, defendants would be held more at fault because the trier of fact would not be permitted to consider plaintiffs “pre-treatment” negligence in apportioning fault in relation to determining plaintiffs damages. Because I see no basis in treating defendants any differently than Dr. Vicencio, I cannot agree with the lower courts’ and plaintiffs interpretation of § 6304. Plaintiffs alleged negligence should be considered regardless of whether defendants had treated plaintiff in the past.

 “The assumption of a duty to protect the decedent while in defendant’s custody merely establishes a legal basis for holding defendant negligent. The mere existence of a duty does not automatically lead to the conclusion that the decedent’s fault should not be considered” when appointing fault. Hickey v Zezulka (On Resubmission), 439 Mich 408, 448; 487 NW2d 106 (1992) (opinion by Riley, J., joined by three other justices).

 In permitting the trier of fact in a medical malpractice case to consider a plaintiffs negligence in apportioning fault and in determining the extent of a defendant’s liability, the majority is not altering the law of this state regarding the application of comparative fault in a tort action. See Brisboy v Fibreboard Corp, 429 Mich 540, 551-552, 556; 418 NW2d 650 (1988) (opinion by Cavanagh, J.) (affirming the jury’s determination that the decedent’s smoking habit, as well as his exposure to the defendant’s asbestos, were both proximate causes, fifty-five and forty-five percent respectively, of the decedent’s lung cancer and subsequent death, and remanding the case to the trial court for the appointment of damages *576 in accordance with such determination); Hardy v Monsanto Enviro-Chem Systems, Inc, 414 Mich 29, 40; 323 NW2d 270 (1982) (holding that “it would be ‘anomalous’ to hold a defendant hable for damages in excess of the amount causally related to his negligence”); Placek v Sterling Hts, 405 Mich 638, 661; 275 NW2d 511 (1979) (holding that “ ‘[t]he doctrine of pure comparative negligence does not allow one at fault to recover for one’s own fault, because damages are reduced in proportion to the contribution of that person’s negligence, whatever that portion is.’ ” (Citation omitted.)

 The authorities relied on by the Court of Appeals have also sometimes been confused by the doctrines of contributory and comparative negligence. See Harding v Deiss, 300 Mont 312, 318; 3 P3d 1286 (2000) (citing contributory negligence cases and stating, “Under [comparative fault], in any case where the patient was responsible for events that led to her hospitalization, the treating physician would not be hable for neghgent treatment.” This is simply a misstatement of the doctrine of comparative neghgence.

 “[AJpplying the principles of comparative fault to a medical malpractice action, a physician is liable only for that portion of the plaintiffs damages that were proximately caused by the physician’s negligence.” Gray v Ford Motor Co, 914 SW2d 464, 467 (Tenn, 1996) (holding that the doctrine of comparative fault could properly be applied to medical malpractice actions so as to require an apportionment of fault between the estate of a decedent who acted negligently in causing her original injury and a physician who acted negligently in treating such injury). See also Wyatt v United States, 939 F Supp 1402, 1412 (ED Mo, 1996) (holding that under Missouri law, Mo Rev Stat 538.230, which requires the trier of fact “[i]n any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services” to “apportion fault among. . . parties,” it was proper for the trial court to reduce the plaintiffs medical malpractice damages in accord with the plaintiffs own negligence which “substantially contributed to initially cause” the reason for which the plaintiff sought medical treatment).

 “This goal [of a fair apportionment of damages] is not served; rather, it is thwarted when a slightly negligent defendant is held liable for one hundred percent of the damages caused principally by the wrongful intentional conduct of a plaintiff.” Hickey, supra at 449.

 I believe that the burden is upon the defendant to present relevant evidence substantiated by either scientific or other documented, reliable, and verifiable findings demonstrating that the plaintiffs injury and damages were a genuinely foreseeable, natural, and probable consequence of the plaintiffs alleged negligence.

 “ ‘The pre-treatment health habits of a patient’.. . ‘are germane to the issue of proximate cause ....’” Bryant v Calantone, 286 NJ Super *580 362, 368; 669 A2d 286 (1996) (citations omitted). “This does not mean, however, that the patient’s poor health is irrelevant to the analysis of a claim for reparation. While the doctor may well take the patient as she found her, she cannot reverse the frames to make it appear that she was presented with a robust vascular condition; likewise, the physician cannot be expected to provide a guarantee against a cardiovascular incident. All that the law expects is that she not mistreat such a patient so as to become a proximate contributing cause to the ultimate vascular injury.” Ostrowski v Azzara, 111 NJ 429, 445; 545 A2d 148 (1988).