NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0448n.06

Nos. 19-2331/2340

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JAMES FRANCES RADKE, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant/Cross-Appellee, | ) | Oct 04, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | |
| MONROE COUNTY, MICHIGAN, JACK | ) | ON APPEAL FROM THE |
| VITALE, MICHELLE M. MARCERO, TINA | ) | UNITED STATES DISTRICT |
| TODD, JESSICA D. CHAFFIN, DAVID | ) | COURT FOR THE EASTERN |
| DELPIOMBO, TOD C. O'LONE, and MITCHELL | ) | DISTRICT OF MICHIGAN |
| MCFADDEN, | ) | |
| | ) | |
| Defendants-Appellees/Cross-Appellants. | ) | |

BEFORE: BATCHELDER, WHITE, and BUSH, Circuit Judges

**PER CURIAM.** "If bad facts make bad law, then 'unusual facts' inspire unusual decisions." *Tharpe v. Sellers*, 138 S. Ct. 545, 547 (2018) (Thomas, J., dissenting). In November 2017, Tod O'Lone, a magistrate for the First District Court of Michigan,[1] signed a warrant (the "Warrant") authorizing the drawing of blood from Appellant James Frances Radke, who was accused of drunk driving. In that state court criminal proceeding, Radke filed a motion to suppress the Warrant, alleging that O'Lone lacked authority to issue it, but pled guilty before the court ruled on the motion.

---

[1] The First District "is a district of the first class," "has 3 judges," and "consists [only] of the county of Monroe." Mich. Comp. Laws § 600.8111.

Radke filed this lawsuit in federal court, pursuant to 42 U.S.C. § 1983, naming as defendants Monroe County (where the First District is located), First District Chief Judge Jack Vitale, and six First District magistrates, including O'Lone (collectively "Defendants"). Radke claimed violations of his Fourth and Fourteenth Amendment rights and that O'Lone and the five other named First District magistrates had each violated the constitutional rights of countless other persons whom Radke sought to represent as a class.[2] The district court dismissed the complaint. We AFFIRM.

## I. Background

On November 12, 2017, Radke crashed his car into a ditch in Monroe County, Michigan. According to the police report, Radke displayed several signs of intoxication, failed or was unable to complete three field sobriety tests, and refused a preliminary breath test.[3] The responding sheriff's deputy sought a search warrant from the First District to draw and analyze blood from Radke. O'Lone, the magistrate on duty, issued the Warrant.[4] The blood test revealed that Radke had a blood-alcohol content of .222, well over Michigan's legal limit.

Radke moved to suppress the blood-test results on the basis that the Warrant was invalid because, Radke claimed, O'Lone was not properly appointed as a magistrate under Michigan Compiled Law ("MCL") § 600.8501(1). "However, before [that motion] was decided, Radke dropped the challenge, pled guilty to the OWI offense, and was sentenced to 210 days in jail." *Radke v. County of Monroe*, No. 19-11483, 2019 WL 5310664, at *1 (E.D. Mich. Oct. 21, 2019). Radke's plea allowed him to apply for leave to appeal; he did not.

---

[2] The district court never ruled on Radke's attempt to certify the class.

[3] This case was resolved under Rule 12(b)(6). Some of the facts in this paragraph come from attachments to the defendant's motion to dismiss, not the complaint itself. We do not rely on these alleged facts to make any legal determinations, however, and set them forth solely to provide relevant introductory background.

[4] O'Lone is the only named defendant who participated in Radke's criminal case. His only involvement was issuing the Warrant.

Radke filed the present lawsuit, claiming that the named magistrates had no "authority to issue search warrants because their appointments . . . were never approved by the Monroe County Board of Commissioners." *Id.* Radke sought "damages on behalf of himself related to the search and on behalf of a proposed class he seeks to represent." *Id.* Specifically, Radke says O'Lone issued an illegal search warrant, causing an unlawful blood draw that violated his Fourth Amendment rights. More broadly, he alleges that all the named magistrates took innumerable actions causing violations of the Fourth Amendment and due process rights of all persons who came before them. Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

The district court dismissed the five magistrates besides O'Lone because "they were not involved in Radke's underlying criminal case and Radke fail[ed] to allege they took any other action related to him." *Id.* The court dismissed Radke's claims against O'Lone, Vitale, and Monroe County on two grounds. First, it held that res judicata barred the claims because Radke already had the opportunity, during his criminal case, to challenge O'Lone's appointment. *Id.* at *2. Second, it held that, despite its determination that the magistrates were initially appointed improperly because the Monroe County Board of Commissioners did not approve their appointments before they took office, the Board ratified the appointments by providing line-item funding for them, so O'Lone had been properly appointed under MCL § 600.8501(1) when he issued the Warrant. *Id.* at *2–3.

Radke timely appeals, and Defendants cross-appeal to raise additional defenses.

## II. Party Presentation Principle

Radke raised three arguments on appeal: that (1) the district court wrongly dismissed his class claims, (2) the district court improperly applied Michigan law by holding that O'Lone's appointment was improper but ratified, and (3) res judicata does not bar his complaint. Defendants

responded to Radke's arguments and raised three additional defenses in their cross-appeal: that (1) the district court's interpretation of Michigan's magistrate-appointment was incorrect and the statute violates the Michigan Constitution, (2) *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Radke's appeal, and (3) the *Rooker-Feldman* doctrine bars Radke's appeal. Under the "party presentation principle," we would ordinarily decide this case on these arguments, avoiding unraised or unpreserved doctrines such as governmental immunity. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). But "[t]here are . . . circumstances in which a modest initiating role for a court is appropriate." *Id.* This is one such time.[5]

On the merits, both sides proceed as if this appeal turns on a binary question of whether O'Lone was properly appointed. This would be true if Radke had brought an action solely to challenge O'Lone's (and the other magistrates') appointment. But he did not; he brought a broad § 1983 case alleging that the magistrates' improper appointment caused a significant number of constitutional injuries, including a personal Fourth and Fourteenth Amendment injury. While much of the argument in this case centers on whether O'Lone had been improperly appointed when he issued the Warrant, the real question for Radke's claims is whether O'Lone met the neutral-magistrate requirement of the Fourth Amendment.

The Supreme Court instructs that, to meet the neutral magistrate requirement, a magistrate "must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972). Radke conceded at oral argument that O'Lone met both requirements, and nothing in his complaint

---

[5] Because the *Rooker-Feldman* Doctrine is jurisdictional, however, we note that it does not bar Radke's appeal. *See Hutchinson v. Lauderdale County*, 326 F.3d 747, 755 (6th Cir. 2003). That doctrine bars lower federal courts from conducting appellate review of final state-court judgments if the state-court judgment itself is the cause of the injury. *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020). Here, Radke's injury was caused by the allegedly invalid Warrant that authorized the drawing of his blood. That is independent from the state-court judgment convicting him of driving while intoxicated.

or briefing says otherwise. In addition, however, the magistrate must have authority to issue the warrant under state law; "when a warrant is signed by someone who lacks legal authority necessary to issue search warrants, the warrant is void *ab initio*." *United States v. Scott*, 260 F.3d 512, 515 (6th Cir. 2001)[6]; *accord United States v. Duval*, 742 F.3d 246, 254 (6th Cir. 2014); *United States v. Beals*, 698 F.3d 248, 265 (6th Cir. 2012); *United States v. Master*, 614 F.3d 236, 241 (6th Cir. 2010). In other words, "a warrant issued by a person lacking state law authority violates the Fourth Amendment." *United States v. Davis*, 970 F.3d 650, 665 (6th Cir. 2020). "States have 'flexibility to determine who has the authority to issue warrants.'" *Id.* (quoting *Master*, 614 F.3d at 240).; *see also Godboldo v. County of Wayne*, 686 F. App'x 335, 342 (6th Cir. 2017) (mentioning state-authority rule in § 1983 case). Because the states have that flexibility, they also have the power "to delineate the scope of that authority." *Master*, 614 F.3d at 241; *see also Shadwick*, 407 U.S. at 354.[7] So while the parties frame the question as whether O'Lone's appointment was proper or improper, the key question is whether O'Lone had state-law authority to issue warrants.

Those questions appear facially identical, but whether they are is more nuanced. Michigan courts apply a "de facto officer" doctrine that "validate[s] . . . the acts of officials who function under color of law" even if the officer's appointment was somehow improper. *People v. Davis*, 272 N.W.2d 707, 710 (Mich. Ct. App. 1978); *see also People v. Townsend*, 183 N.W. 177, 178 (Mich. 1921). Therefore, O'Lone might have had state-law authority to issue warrants, as required

---

[6] *Scott* has been abrogated on other grounds. As we recognized in *Master*, 641 F.3d at 243, *Scott*'s statement that the good-faith exception to the exclusionary rule does not apply where a warrant is void for this reason, *see Scott*, 260 F.3d at 516, is no longer viable in light of subsequent Supreme Court decisions addressing the good-faith exception. This abrogation of *Scott*'s discussion of the good-faith exception has no bearing here, however, because this case involves a § 1983 civil action in which the exclusionary rule and good-faith exception have no relevance. *See Davis v. United States*, 564 U.S. 229, 248 n.9 (2011) (recognizing that that plaintiff could proceed in § 1983 suit against municipality "without the obstacle of the good-faith exception").

[7] Although "if a search otherwise complies with the Fourth Amendment, the Court generally holds that it does not matter that the search violated some state requirements," *Davis*, 970 F.3d at 665, our circuit applies an exception to this rule "in this context: '[s]tate law determines what person is allowed to approve what warrant,' so a warrant issued by a person lacking state-law authority violates the Fourth Amendment." *Id.* (quoting *Master*, 614 F.3d at 239–41).

by our Fourth Amendment jurisprudence, regardless of whether his appointment was proper under Michigan law.

### III. Analysis

We review de novo a Federal Rule of Civil Procedure 12(b)(6) dismissal, accepting as true all factual allegations contained in the complaint and construing it "liberally in favor of the party opposing the motion to dismiss." *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009).

To reiterate, Radke's personal claims rest only on the proposition that O'Lone was improperly appointed under MCL § 600.8501, and therefore was not authorized to issue warrants under Michigan state law. "State law determines what person is allowed to approve what warrant. If a state has the flexibility to determine who has the authority to issue warrants, it should be allowed to delineate the scope of that authority." *Master*, 614 F.3d at 240. "To hold otherwise would allow federal courts to completely undermine state determinations of who is an authorized magistrate." *Id.* at 241.

Michigan's magistrate appointment statute provides:

> In all [] counties in districts of the first . . . class, the county board of commissioners shall provide for not less than 1 magistrate if recommended by the judges of the district. Additional magistrates may be provided by the board upon recommendation of the judges. All magistrates provided for shall be appointed by the judges of the district and the appointments shall be subject to approval by the county board of commissioners before a person assumes the duties of the office of magistrate.

MCL § 600.8501(1). Radke's claim is that the County Board of Commissioners failed to properly approve O'Lone before he took office. This kind of challenge has only been raised once before. *See United States v. Neering*, 194 F. Supp. 2d 620, 625–28 (E.D. Mich. 2002). Radke is the first plaintiff we are aware of to allege violation of MCL § 600.8501(1) in a case seeking civil relief for a violation of the Fourth Amendment.

In *Neering*, the magistrate at issue was appointed under a "blanket authority arrangement" granted to the state court's chief judge by the county board. *Id.* at 626. The government argued that the local practice—under which the chief judge purportedly had authority to appoint magistrates at his pleasure with no ex-post approval requirement—satisfied statutory requirements. *Id.* The district court held that this system ran afoul of the process required by MCL § 600.8501(1), which plainly requires that the county board approve magistrate appointments after they have been made. *Id.*

Defendants assert a similar but distinct defense of their process; they claim that Monroe County's use of budget line-items to pay the magistrates constitutes approval. They also claim that interpreting the statute to require any other form of county board approval would violate the Michigan Constitution's doctrine of separation of powers. Our review reveals no Michigan court decisions interpreting the county approval requirement of MCL § 600.8501(1).

So, rather than dwell on the propriety of O'Lone's appointment, we turn to whether O'Lone was a de facto officer under Michigan law. If he was, we consider whether that status gave him authority, under Michigan law, to issue the warrant in Radke's case, so as to satisfy the state-law component of the Fourth Amendment's neutral-magistrate requirement.

As we explain hereinafter, we conclude that Michigan would consider O'Lone a de facto officer at the time he signed the Warrant, that O'Lone thus had sufficient authority to issue the Warrant, and that he therefore did not violate Radke's federal constitutional rights. Radke therefore failed to state a claim upon which relief may be granted. Both his claims and the claims of his purported class were dismissed properly.

**A. O'Lone was a de facto officer**

Under Michigan's de facto officer doctrine, Michigan courts "will validate, on grounds of public policy and prevention of a failure of public justice, the acts of officials who function under color of law," even if the official was improperly appointed. *Davis*, 272 N.W.2d at 710; *see also Ryder v. United States*, 515 U.S. 177, 180–81 (1995) (justifying the federal de facto officer doctrine on similar grounds).[8]

In Michigan, a de facto officer must (1) be in possession of, but not properly entitled to, a legal, de jure, office, (2) exercise the duties of that office, and (3) have "a fair color of right or title to the office, or [have] acted as an officer for such a length of time, and under such circumstances of reputation or acquiescence by the public and public authorities, as to afford a presumption of appointment" and "induce people, without inquiry, and relying on the supposition that he is the officer he assumes to be, to submit to or invoke his action." *Davis*, 272 N.W.2d at 710 (citation omitted); *People v. Stackpoole*, 375 N.W.2d 419, 423–24 (Mich. Ct. App. 1985) (applying the *Davis* test). The Michigan Supreme Court recited the same principles in *People v. Matthews*, 286 N.W. 675, 678 (Mich. 1939).

Accepting all facts in a light most favorable to Radke, and accepting, *arguendo*, that O'Lone's appointment did not comply with the statutory process prescribed by MCL § 600.8501, O'Lone satisfied the de facto officer doctrine. O'Lone possessed a properly created and funded magistrate seat and he exercised the duties of that seat—satisfying the first two elements set forth in *Davis* and *Matthews*. As to the third element, O'Lone "acted as an officer for such a length of

---

[8] The federal doctrine does not directly affect our analysis, because the question we are facing is whether O'Lone had *state law* authority to issue a warrant. With that said, see *SW General, Inc. v. N.L.R.B.*, 796 F.3d 67, 81–82 (D.C. Cir. 2015), for a thorough discussion of the federal de facto officer doctrine, and the modified doctrine applied by the D.C. Circuit.

time, and under such circumstances of reputation or acquiescence by the public and public authorities, as to afford a presumption of appointment" by the time he issued Radke's search warrant in 2017. By that point—according to Radke's own allegations—O'Lone had been working as a magistrate for over three years, exercising powers to issue misdemeanor and felony arrest warrants, issuing search warrants, and setting bonds for persons in custody. And based on Radke's complaint, the allegedly defective appointment system—having the Chief Judge appoint a magistrate, followed by ex-post generalized funding for all magistrates by the Board—had been in place for at least fifteen years before O'Lone assumed office.

That result does not differ if we apply the test that Radke appears to prefer. His brief refers to a section of a treatise cited by a 1960 single-Justice dissent in *Greyhound Corp. v. Mich. Pub. Serv. Comm'n*, 104 N.W.2d 395, 403 (Mich. 1963) (Carr, J., dissenting in part), which, as recited in the dissent, reads:

> A person is a de facto officer where the duties of the office are exercised (1) without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be; (2) under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like; (3) under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public; (4) under color of an election or an appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such.

*Id*. (quoting 43 Am. Jur., pp. 225, 226 [date omitted in original]). Radke references only the second part of this definition and argues that because O'Lone's appointment was not "a valid appointment," the doctrine does not apply. But Radke's argument ignores the fact that this definition sets out four alternative circumstances, including the third one: ". . . the duties of the office are exercised . . . (3) under color of a known election or appointment, void . . . by reason of

some defect or irregularity in its exercise, such . . . defect being unknown to the public . . . ." *Id.* And this part of the definition describes exactly what Radke alleges: a known appointment voided "by reason of some defect or irregularity in its exercise" that is "unknown to the public." O'Lone meets this test, for the reasons discussed above. Radke's own complaint claims that O'Lone served as a magistrate for about three years before he signed the warrant at issue here; Radke's allegation that O'Lone was not a de jure magistrate stems from a defect or irregularity in the exercise of a known appointment; and Radke makes no allegation that the defect was known to the public. The definition's second circumstance—the only one Radke acknowledges—applies only "under color of a known and valid appointment or election," which in this case, we are assuming (without deciding) did not occur. Radke also briefly mentions the federal test by arguing that the flaw in O'Lone's appointment was not "merely technical." But we are applying Michigan's de-facto officer doctrine, not the federal one. And the alleged defect in O'Lone's appointment is at least of the same type as that in *People v. Davis*—where an appointing judge lacked *any* statutory authority to appoint a special prosecutor. 272 N.W.2d at 710. If the doctrine only applied to "merely technical" defects in Michigan, it is hard to explain its application in *Davis*. If anything, the defect here—if there is one—would be more "technical" than that in *Davis*, because here we at least know that there was authority to *appoint* O'Lone; the only dispute is whether the method of "approval" sufficed. This brief argument—adverted to only in passing—does not persuade. Therefore, we conclude that the Michigan Supreme Court would find as we find: that, assuming he was improperly appointed, O'Lone was, at the time he signed the Warrant, a de facto officer under Michigan's de facto-officer doctrine.

**B. De facto officers under Michigan law satisfy the neutral-magistrate requirement**

The next question is whether O'Lone, as a de facto officer, had sufficient state-law authority to satisfy the Fourth Amendment's neutral-magistrate requirement.[9] Our research uncovered no caselaw directly on point. The Second Circuit held that an arrest by two unlawfully appointed police officers did not violate the Fourth Amendment because the officers were covered by New York's de facto officer doctrine. *Malone v. County of Suffolk*, 968 F.2d 1480, 1482–83 (2d Cir. 1992). Closer to home, though further from the facts, our circuit held that a de facto judge's procedurally defective appointment did "not render his judicial actions invalid or deprive him of absolute judicial immunity in connection with the discharge of his judicial duties." *White*, 892 F.2d at 462 (applying Tennessee law); *see also Lloyd v. Pokorny*, No. 2:20-cv-2928, 2020 WL 4455547, at *8 (S.D. Ohio, Aug. 3, 2020) (applying Ohio's version of de facto doctrine).

Remember, "[s]tates are entitled to some flexibility and leeway in their designation of magistrates" so long as they meet the constitutional requirements from *Shadwick*, 407 U.S. at 354. States have the right to designate both "who has the authority to issue warrants" and "to delineate the scope of that authority." *Master*, 614 F.3d at 241. This power is broad; "it is beyond question that we determine who is a qualified magistrate by consulting state law." *Id.* Michigan's de facto officer doctrine ratifies actions taken by public officers who were improperly appointed to their positions but otherwise acted under color of law. *Bd. of Wayne Cnty. Auditors v. Benoit*, 20 Mich. 176, 180 (Mich. 1870); *Davis*, 272 N.W.2d at 710. Radke does not plausibly allege that O'Lone exceeded this definition.

Radke raises three arguments on this issue. First, he points to an opinion that says that warrants "signed by someone who lacks the legal authority necessary to issue search warrants [are]

---

[9] We emphasize that Radke concedes that O'Lone met the two *Shadwick* requirements, so the only issue we are looking at is whether O'Lone was authorized to issue warrants under state law.

void *ab initio*," *Scott*, 260 F.3d at 515, and argues that even if O'Lone was a de facto officer, that would not defeat Radke's claims.[10] This argument raises a potentially close question. As noted, our guiding question is whether O'Lone possessed adequate authority to issue the warrant. If the de facto officer doctrine *bestows* authority, then the answer is yes. But if, instead, it merely serves as a procedural bar to challenging an official's lack of authority—i.e., a state procedural rule limiting the instances in which someone can challenge an official's lack of authority, rather than a positive *source* of authority—then it is questionable that the de facto officer doctrine would suffice.

On the one hand, some Michigan cases invoke the de facto officer doctrine as a reason to avoid addressing a challenge to an officer's authority, describing the doctrine as being grounded in the recognition that, procedurally, it is inappropriate to collaterally challenge an official's authority in a lawsuit focused on something else. For example, in *People v. Townsend*, 183 N.W. 177, 178 (Mich. 1921), a defendant who was arraigned after a drunk-driving accident moved at trial to quash the information filed against him on the basis that the warrant issued for his arrest was issued by a magistrate who lacked jurisdiction. *Id.* The Michigan Supreme Court invoked the de facto officer doctrine to reject the challenge; but, notably, it seemed to use the doctrine as a procedural device to avoid deciding if the magistrate had authority—not to decide that the magistrate actually had authority. *See id.* ("We are not inclined to stop and examine the question of whether such magistrate had authority to hold the office he in fact occupied and to which he had color of authority, but content ourselves with applying the rule that, if the magistrate was a de

---

[10] As discussed *supra* at [5 n.7], an unrelated portion of *Scott*—holding that the good-faith exception does not apply when warrants are void for this reason, *id.* at 517—was abrogated by subsequent Supreme Court decisions discussing the good-faith exception, as recognized in *Master*, 614 F.3d at 243. This discussion in *Master*, of course, did not affect *Scott*'s statement that a warrant "signed by someone who lacks the legal authority necessary to issue search warrants [is] void *ab initio*," a proposition that *Master* itself repeated, as have several other of our published decisions. *See Master*, 614 F.3d at 241; *see also United States v. Duval*, 742 F.3d 246, 254 (6th Cir. 2014) (reciting same rule from *Scott*); *United States v. Beals*, 698 F.3d 248, 265 (6th Cir. 2012) (same). And because we operate here in the civil context, not the criminal suppression context, the good-faith exception is irrelevant for our purposes.

facto officer, his act in this public matter cannot be attacked in this proceeding nor his title to the office be here passed upon.").[11]

On the other hand, some statements from the Michigan Supreme Court indicate that the doctrine does bestow at least practical authority to act. For example, in the same paragraph of *Townsend*, the court added that "it would avail defendant nothing [to challenge the magistrate's authority] because there is no difference between the acts of de facto and de jure officers, so far as the public interests are concerned. . . . Even though a law creating a judicial office be declared void, the acts of an official thereunder will be upheld[.]" *Id.*; *see also Gildemeister v. Lindsay*, 180 N.W. 633, 635 (Mich. 1920) ("Turning to Black on Judgments, vol. 1 § 173, we find the following: 'In order that a judgment should be recognized as valid, it is of course necessary that it should have been rendered by a lawful and duly constituted court . . . . But on principles of public policy and for the security of rights, it is held that the regular judgments of a de facto court, whose existence has afterwards been pronounced unconstitutional and void, are nevertheless valid and conclusive.'"); *id.* ("'[T]here can be no question that judgments rendered by and other acts performed by [a de facto judge] are valid and binding.'" (citation omitted)).

These latter statements persuade us that the Michigan de facto officer doctrine does, as a practical matter, bestow authority on de facto officials to act. Thus, Radke's invocation of *Scott*'s pronouncement that warrants are void when "signed by someone who lacks the legal authority necessary to issue" them, 260 F.3d at 515, does not help his cause.

---

[11] *See also id.* (describing de facto officer doctrine as a "salutary rule that while one is in public office, exercising the authority thereof under color of law, we cannot, except in a direct proceeding to test his right to office, pass upon the question here raised[.]"). The Michigan Court of Appeals, in *People v. Davis*, took a similar approach. *See* 272 N.W.2d at 709-10 (holding that special prosecutor's "incumbency was illegal" because he was illegally appointed, but adding that under the de facto officer doctrine, his "authority . . . in this instance could not be attacked collaterally, but required a proceeding instituted directly for that purpose").

Second, Radke argues that applying the de facto-officer doctrine in this case violates the Guarantee Clause of the United States Constitution—that is, by applying the de facto-officer doctrine we are depriving the people of Michigan of their right to legislatively decide how magistrates are selected. He relies upon the Supreme Court's comment that "the people of the States [have the authority] to determine the qualifications of their most important government officials." *Gregory v. Ashcroft*, 501 U.S. 452, 463 (1991). That critique, however, could apply in any case implicating the de facto officer doctrine—itself a part of Michigan's law that the state's high court has recognized on several occasions. We are not acting, as Radke suggests, as a federal court coming from on high to "usurp the sovereign prerogatives of the State of Michigan." Rather, we are applying Michigan law to determine whether O'Lone had authority under Michigan law to issue warrants, so that we may properly analyze the federal claims Radke brought in federal court.

Finally, Radke argues that his constitutional claims would be unaffected by a finding that Radke was a de facto officer. As explained above, he is incorrect.

The federal Constitution leaves to states the power to determine who has the authority to issue warrants. *Master*, 614 F.3d at 240. In Michigan, a de facto judicial officer's "judgments . . . and other acts . . . are valid and binding." *Gildemeister*, at 180 N.W. at 635. O'Lone was a de facto officer when he issued the Warrant. He thus had authority adequate to satisfy the Fourth Amendment, and Radke's individual claim therefore fails.

## C. The Warrant satisfied the Fourth Amendment neutral-magistrate requirement

Radke conceded any argument that O'Lone did not meet the two *Shadwick* requirements; the only issue before us is whether O'Lone had state law authorization to issue warrants. If O'Lone's appointment was proper under MCL § 600.8501(1), he was authorized by Michigan law to issue warrants. If O'Lone's appointment was improper under MCL § 600.8501(1), he was a de facto magistrate when he issued the Warrant, and therefore was authorized by that doctrine of

Michigan law to issue warrants. Either way, O'Lone met the neutral magistrate requirement. Radke failed to plausibly allege a constitutional violation. His claims were properly dismissed.

## D. Other Claims

Because Radke failed to plausibly state an individual claim, we also AFFIRM dismissal of the defendants brought into the suit solely for alleged wrongs against proposed class members. *See Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (explaining that "as goes the claim of the named plaintiff, so go the claims of the class.").

Because we have dismissed all named and purported plaintiffs, no case or controversy remains in which we may analyze Defendants' claims of error. *See Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 335 (1980). We DISMISS the cross-appeal as moot.

## IV. Conclusion

O'Lone was a de facto officer under Michigan law and had state-law authority to issue warrants when he issued the one involved here. The Fourth Amendment's neutral-magistrate requirement was satisfied and there was no constitutional violation.

For the foregoing reasons, we AFFIRM dismissal of Radke's personal claims and the claims of his purported class. We DISMISS Defendants' cross-appeal.